JAMES H. BRADLEY vs. GEORGE R. BAILEY AND ANOTHER.

New Haven Co., Dec. T., 1887. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

The executor of a tenant for life is entitled to crops sown during his lifetime but maturing after his death.

And it does not affect this right that the tenant for life was rapidly failing in health and had reason to expect his early death when the land was sown.

This rule applied to a case where a lessee of a tenant for life sowed the land while he had reason to suppose that the latter was near his death with a fatal disease.

The right to emblements does not depend upon the land being cultivated according to the rules of good husbandry.

[Argued December 7th, 1887—decided January 13th, 1888.]

Action for entering upon land occupied by the plaintiff and destroying a crop of rye thereon; brought to the Court of Common Pleas in New Haven County.

The complaint alleged that John B. Bailey was on the 11th day of April, 1885, a tenant for life of the land in question, and on that day leased the same for three years to the plaintiff; that the plaintiff on the 18th day of September, 1885, sowed the land with rye; that the said John B. Bailey died on the 20th of September, 1885; and that in June, 1886, the defendants, George R. Bailey and Abraham L. Bailey, wrongfully entered upon the land and plowed in and destroyed the crop of rye. The defendants pleaded a denial of most of the allegations of the complaint, with the following special defense:—That, if the plaintiff did anything upon said premises on September 18th or 19th, 1885, he did the same with full knowledge that said John B. Bailey was then dying; that if he did anything it was nothing more than to harrow the soil in a hasty and superficial manner, immediately after he had dug his crop of potatoes from the same, and to scatter a few seeds upon the same, without having first plowed and manured the same, as is customary and proper with the farmers in this state, and at an untimely season of the year, and without laying the same down to grass as is customary and proper; all of said acts of the plaintiff being for the purpose of defrauding said defendant George R. Bailey of his use and right to said land after the death of said John B. Bailey.

The case was tried to the jury before *Deming, J.*, and a verdict rendered for the plaintiff.

The defendant appealed on the ground of error in the rulings and charge of the court. These rulings and the charge of the court, as well as further facts in the case, are stated in the opinion.

*L. Harrison* and *E. Zacher*, for the appellant.

1. Emblements are, "to compensate for the labor and expense of tilling, manuring and sowing lands, and also for the encouragement of husbandry." Woodfall's Landlord & Tenant, 347; 1 Washb. R. Prop., 101, §§ 1, 2. "Their foundation is the encouragement to husbandry." *Debow* v. *Colfax*, 5 Halst., 128. The defendants claimed that such work as the plaintiff had performed, and on account of which he made his claim to the rye, was not such work that the law would recognize it as "husbandry." What work the law recognizes as "husbandry" became material. The claim of the defendants was that the custom of the farmers of this state makes the rule by which to determine what work is necessary to constitute husbandry. There could be no other criterion, and this evidence should have been admitted.

2. The evidence of the several witnesses offered to show the plaintiff's knowledge of the physical condition of Bailey, as expressed by the plaintiff in his conversations with them, was admissible. "In order to entitle a tenant or his executors to emblements, the estate which he has must, in the first place, be uncertain in its duration. If he, knowing it will terminate before he can gather his crop, plants it, it is his folly or generosity to his successor who will take it." 1 Washb. R. Prop., 103, § 8. The vital question in the case then was—did the plaintiff know that his estate would terminate before he could gather the crop? The element of uncertainty was the duration of the life of Bailey; and the plaintiff's knowledge of this uncertainty became the material point in issue. The defendants say that the plaintiff could not have absolute, positive knowledge that the life tenant would die before he could gather his crop. But the defendants claim that the knowledge referred to in the authorities in such a case as this, where the duration of life is the uncertain factor, is the honest belief of the party whose tenancy depends upon this uncertain factor. We cannot look into the mind of man; and this knowledge, this belief, can be determined only by the acts, and by the words that may fall from the lips of the

interested person. And his knowledge must be determined by his acts and his words; and his words are of as much importance as his acts in this determination. The fact that he was not an expert would not make his belief less certain.

3. The court erred in its charge to the jury. As stated before, our claim is that, in the case at bar, the term "knowledge" is synonymous with "belief." But the court in the language used proceeds on the assumption that there can be a difference between the plaintiff's belief of the certainty of Bailey's death and the plaintiff's knowledge of the certainty of his death. Certainly the jury must have drawn the inference from the language used by the court, that however much the plaintiff believed that his crops would not mature before Bailey's death, that would make no difference. He was entitled to the crop because he did not possess the knowledge to a certainty, such as is possessed by no mortal.

*E. P. Arvine* and *G. A. Tyler*, for the appellee.

BEARDSLEY, J. This is a complaint in trespass, in which the defendants appeal from an adverse judgment in the Court of Common Pleas.

The material allegations of the complaint are that one John R. Bradley was tenant for life of a certain tract of land, of which the defendant George R. Bailey was tenant for life in remainder; that John B. Bailey, in the month of April, 1885, leased the tract to the plaintiff for the term of three years; that the plaintiff sowed a portion of the tract with winter rye on the 18th of September, 1885; and that John B. Bailey died on the 20th of September, 1885, and that George R. Bailey and the other defendant by his direction, in the month of June following plowed in and destroyed the crop of rye then maturing. The truth of these allegations of the complaint was admitted upon the trial, except that the defendant claimed that the rye was sown on the 19th instead of the 18th day of September, 1885, which however is immaterial.

The only question which we are called upon to consider

arose under the issue formed by the plaintiff's traverse of the second answer to the complaint, the material part of which is as follows : The defendants say that if the plaintiff did any thing upon said premises on September 18th or 19th, 1885, he did the same with full knowledge that said John B. Bailey was then dying ; that if he did any thing it was nothing more than to harrow the soil in a hasty and superficial manner immediately after he had dug his crop of potatoes from the same, and to scatter a few seeds upon the same, without having first plowed and manured the same, as is customary and proper with the farmers in this state, and at an untimely season of the year, and without laying the same down to grass, as is customary and proper ; all of said acts of the plaintiff being for the purpose of defrauding said George R. Bailey in his use of and right to said land after the death of said John B. Bailey."

Upon the trial of this case to the jury the plaintiff, in reply to inquiries made by the defendants upon cross-examination, described the manner in which he prepared the ground for the crop. The defendant afterward asked his own witness this question. "What is the customary way of sowing rye and preparing the ground for it?" The court excluded this question upon the objection of the plaintiff that there was no established custom and that it was immaterial. The defendants claimed the testimony to show that the land was not prepared in the customary way as a part of the alleged defense. This ruling of the court is assigned for error.

In support of the allegation in the answer that the plaintiff knew that Bradley, the tenant for life, was dying when he sowed the crop, the defendants called Dr. Webb, the physician who attended him during the month of September, 1885, and who, after describing his symptoms, testified that for the last week or more of his life he was gradually failing every day, growing weaker and nearer to his end every day, and that this was apparent to every one who had common sense.

It was admitted that at the time of his death, and for several months before, he resided with the plaintiff.

The defendants then offered several witnesses to testify— one, that Bradley appeared to be dying on the 16th and 17th of September, when the plaintiff was present; another, that the plaintiff's attention was called by him to Bradley's condition on the 18th of September, 1885; another, that the plaintiff had said on the 18th and 19th of September that Bradley could not live through the night; and another, that the plaintiff had said a few days before Bradley's death, that he was very low. All of this evidence, except the testimony of Dr. Webb, was objected to by the plaintiff and excluded. The plaintiff, against the objection of the defendants, was permitted to testify in contradiction of Dr. Webb, that the doctor had told him, as late as the last week of Bailey's life, that "he might live for quite a long time; that he might get out of it and live for a year or two, and perhaps longer, and might not live so long as that."

The court charged the jury on this point as follows:— " The question then is, did the plaintiff know for a certainty that his lessor, the tenant for life of the estate, would die before he could mature that crop? If we find that there was any uncertainty in regard to the duration of the life of Mr. Bailey, you must find for the plaintiff. If you find that the time of his death was so certain that he (Bradley) had no doubt in regard to it, then your verdict should be for the defendants."

The several rulings of the court and the charge to the jury referred to, are assigned for error. We do not think that either of them afford the defendants any ground of exception. On the contrary we think that the charge was too favorable to the claim of the defendants. It was adapted to the issue between the parties, and would perhaps have been unobjectionable if that issue had been a material one; but the issue was an immaterial one and the plaintiff would have been entitled to judgment upon the conceded facts if it had been found in favor of the defendants.

If it were possible for the plaintiff to have had absolute

knowledge beforehand of the time of Mr. Bailey's death, and he had known that it would occur before the maturity of the crop which he was planting, his right to it would not be thereby defeated.

In Co. Litt., p. 55 *b.*, note 1, the law is thus stated:—" So therefore, if tenant for life soweth the ground and dieth, his executors shall have the corn, for that his estate was uncertain and determined by the act of God; and the same law is of the lessee for years of the tenant for life." Blackstone says (2 Comm., 122;) " Therefore if a tenant for his own life sows the land and dies before harvest, his executors shall have the emblements or profits of the crop; for the estate was determined by the act of God, and it is a maxim of the law that *actus Dei nemini facit injuriam.*" We are referred to no case in which the exception claimed by the defendants has been made to this rule during the centuries of its existence.

To hold that this right may be defeated after the tenant's death, by evidence of his condition of health, or by his declarations or those of his lessee imputing a belief, however well founded, or knowledge, if such knowledge be possible, that his life would not continue until harvest time, would in many cases subvert an important object of the rule, the encouragement of husbandry, and open a fruitful source of unseemly litigation. A tenant in failing health, especially if he had expressed a belief that his end was near, would naturally hesitate to put in crops which might be successfully claimed by his successor in title, or in respect to which his estate might become involved in litigation.

The question asked by the defendants of a witness as to the customary mode of sowing rye and preparing the ground for it, was properly excluded. We have shown that the plaintiff had a right to sow the rye for his own use, and it was a matter of no consequence to the remainder-man how he did it. Nor did his right to the crop depend upon his cultivating the land according to the rules of good husbandry. If it was done in an unhusbandlike manner and in such a way that the crop would be an inconsiderable one,

it would be wholly his own loss. The fact of his hurried and imperfect mode of sowing the land may have been of pertinence to the question whether he was in reality sowing rye or only pretending to do so. But it was not offered for this purpose, but to show that he was acting in the belief that the tenant for life would die in a few days. But as we have already shown, this belief was of no importance. His right did not depend upon the condition of the tenant for life. And he would have no interest in putting any labor on the land as a matter of mere pretence, as he would only lose his labor by so doing.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.