REUBEN S. TURNER v. G. S. TURNER et al.

(*Knoxville.*   September Term, 1915.)

1. **LIFE ESTATES.   Lessees of life tenant.   Rights of.**

Under Shannon's Code, sec. 4184, providing that, where a life
tenant shall lease the estate and die before expiration of the
lease the rent may be apportioned between his representative
and the remainderman, a life tenant cannot create a lease on
land which will extend beyond the life estate, the remainderman
not joining; for the remainderman is entitled to share in the
rental *sum pro tanto* under the statute or to disaffirm.   (*Post, p.
p.* 594. 595

Acts cited and construed:   Acts 1877, ch. 159.

Cases cited and approved:   Arnold v. Hodges, 29 Tenn., 40;
Collins v. Crownover (Ch. App.), 57 S. W., 357; Hoagland v.
Crum, 113 Ill., 365; Carman v. Mosier, 105 Iowa, 367.

Code cited and construed:   Sec. 4184 (S.).

2. **LIFE ESTATES.   Leases by life tenant.   Disaffirmance by
remainderman.**

Where, after the death of a life tenant, the remainderman sought
to recover possession of the land and compensation from lessees
for use, there was no ratification of the lease within Shannon's
Code, sec. 4184, authorizing an apportionment of rent.   (*Post, p.
p.* 594. 595

3. **LIFE ESTATE.   "Emblements."   Right to.**

Where a life tenant, having leased the premises, died, and the
remainderman did not recognize the lease, the lessee of the life
tenant was entitled to the emblements, which are the crops of
grain growing yearly, but requiring an outlay of labor or in-
dustry, without payment of any compensation for use of the land
in harvesting the emblements (citing Words and Phrases, First
and Second Series, Emblements).   (*Post, pp.* 596-598.)

Cases cited and approved:   Edgehill v. Mankey, 79 Neb., 347;
Bradley v. Bailey, 56 Conn., 374.

Turner v. Turner.

FROM COCKE.

Appeal from the Chancery Court of Cocke County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—A. N. SHOUN, Special Chancellor.

SIMERLY & SIMERLY, for plaintiff.

AILOR & CARTY, for defendants.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This is an action of unlawful detainer and to recover rent.

The mother of complainant was the life tenant of a tract of land which was leased by her authority to defendants for the year 1912. She died on June 2, 1912, and the bill was filed shortly thereafter by complainant, who was the remainderman.

The defendants, who are the lessees of the tenant for life, had sowed the land to corn, beans, and potatoes prior to June 2d, and in their answer they asserted their right to emblements.

The complainant set up a claim to compensation from the lessees for the use and possession of the land for the entire year of 1912, and sought a recovery thereof. The bill of complaint, moreover, alleged the falling in of the life estate, and that complainant became

132Tenn.38

thereupon "entitled to the land and everything thereon," and prayed for the issuance of a writ of possession.

The court of civil appeals treated the case as one where complainant had recognized the right of the lessee to the premises, under the life tenant's contract, thus making applicable the provisions of section 4184 of Shannon's Code (Acts 1877, ch. 159) which is as follows:

"Where a tenant for life of real estate shall create a lease out of his said estate for one or more years, and shall die before the expiration of said lease, and before the term fixed for the payment of the rent, the rent may be apportioned, and the executor or administrator of said tenant for life may recover of the lessee, *pro rata,* according to the contract, and for the time said lessee had the use of the property until the death of said tenant for life."

That court, reversing the chancellor, rendered a decree in behalf of complainant for rents in accordance with the prayer of the bill. A review of its action is sought by writ of *certiorari* on the question of rents; the question of possession having been disposed of by an agreed order in the lower court.

It was competent for the complainant, as remainderman, to recognize or ratify that lease contract, and to thus share in the rental sum *pro tanto* under the statute, or to disaffirm. *Arnold* v. *Hodges,* 10 Humph., (29 Tenn.), 40. But we fail to see how in an effort to dispossess the subtenant and to recover for past use

Turner v. Turner.

and occupation in his own right there was evidenced the ratification of the lease found by that court. The contrary is true. The complainant did not recognize the contract of rental as one validly made by or under the authority of the life tenant, nor the right of the lessee to remain in possession thereunder accounting in part to the personal representative of the life tenant.

The above-quoted statute was not intended to put it within the power of a life tenant to create a lease upon the land which would extend beyond the date of the falling in of the life estate, the remainderman not joining. This was held in the case of *Collins* v. *Crownover* (Ch. App.), 57 S. W., 357, in an opinion by the present chief justice, while on the bench of that court, which ruling was affirmed by this court.

At common law the lease contract of a life tenant terminated at his death. *Arnold* v. *Hodges,* supra; *Collins* v. *Crownover,* supra; *Hoagland* v. *Crum,* 113 Ill., 365, 55 Am. Rep., 424; *Carman* v. *Mosier,* 105 Iowa, 367, 75 N. W., 323.

The purpose of the act of 1877 was to correct the harsh and artificial rule of the common law to the effect that such a contract of lease was so far an entirety as that the rent so arising could not be apportioned; therefore that on the death of the life tenant in the course of the year before the due date for the rent his lessee might quit the premises and pay no rent to any one for the occupation. *Collins* v. *Crownover,* supra.

What, then, were the rights of the respective parties, on the basis of the statute not being applicable?

The lessee of the life tenant clearly was entitled to emblements. 24 Cyc. 1070. Coke on Littleton states the rule broadly:

"So, therefore, if tenant for life soweth the ground and dieth, his executors shall have the corn, for that his estate was uncertain and determined by the act of God; and the same law is of the lessee for years of the tenant for life."

See, also, *Edgehill* v. *Mankey,* 79 Neb., 347, 112 N. W., 570, 11 L. R. A. (N. S.), 688, and note.

Emblements may be defined to be such crops of grain, roots, and the like as grow yearly, not spontaneously, but by reason of an outlay of labor or industry in the sowing or planting in one part of the year, the recompense for which is to be the crop maturing in the later part of the same year. Words and Phrases, First, Series, 2359; Id., Second Series, 253.

The right to take emblements depends upon the fact of sowing or planting by the life tenant or lessee, and does not attach by reason merely of a preparation of the soil for planting. *Bradley* v. *Bailey,* 56 Conn., 374, 15 Atl., 746, 1 L. R. A., 427, 7 Am. St. Rep., 316; *Collins* v. *Crownover,* supra.

Where, as here, the life tenant makes a lease and dies before the expiration of the term, the lessee, if he has sown the land prior to such death for the production of *fructus industriales,* is entitled to emblements.

The doctrine is said to rest partly on the idea of compensation, but chiefly upon the policy of encouraging agriculture by assuring the fruits of his labor to one who cultivates soil thus held by uncertain tenure. The doctrine allows the life tenant or his lessee the right of ingress and egress for the cultivation of the crop if growing, for its preservation, and for its removal at maturity.

The record does not disclose that the lessee did more than exercise this right.

Is the remainderman, who disaffirms the lease contract made by the life tenant, entitled to recover rent or compensation for such qualified use made of his land? This appears to be a problem on which the authorities differ. Plowden at an early day raised the question in Queries appended to Plowden's Reports, p. 239, and inclines to the view that the remainderman would be. Williams in his work on Executors, and Washburn on Real Property, raise the question, and refer to Plowden, but do not themselves venture an answer. Such a claim on the part of the remainderman is not well founded, in the opinion of Redfield in 3 Redf. Wills, 155, par. 5, and of Pingrey in 1 Pingrey, Real Prop., sec. 308. We do not find any adjudication of the point by the courts. It would seem that the latter view best comports with the idea of compensation to the lessee that underlies the doctrine of emblements. It is not apparent that he would be encouraged to enter and cultivate under the uncertain tenure of a tenant for life if he be held subject to be called

to pay the remainderman for the qualified use a sum that is undetermined and indefinite as to amount.

However, this question does not stand for solution on the record. The complainant did not sue to recover for any such qualified use, nor did he adduce any proof as to the value of such a use.

In our view, the special chancellor, in disallowing rents as such, reached a correct result, and the court of civil appeals erred in not so ruling. Reversed. Decree here affirming the decree of the chancery court; all costs to be paid by complainant.