McCRAW v. SIMPSON et al. (two cases).
Nos. 2811, 2812.

Circuit Court of Appeals, Tenth Circuit.
March 17, 1944.

Rehearing Denied April 20, 1944.

James E. Whitehead, of Fort Smith, Ark., for appellant.

Roy Frye, of Sallisaw (Amelia Patterson, of Sallisaw, on the brief), for appellees.

Before PHILLIPS and MURRAH, Circuit Judges, and KENNEDY, District Judge.

KENNEDY, District Judge.

This appeal involves two suits instituted in the State Courts of Oklahoma, one in and for the County of Sequoyah and the other in and for the County of Hughes. In each suit appellant McCraw was the defendant and she caused a removal of both the suits to the United States District Court for the Eastern District of Oklahoma upon the grounds of diversity of citizenship or separable controversy. In the latter Court the cases were consolidated for the purpose of trial.

The facts pertinent to the consideration of the points here involved may be briefly stated as follows: Hugh Simpson between the years 1916 and 1922 executed deeds conveying to the appellant Penelope McCraw, his daughter, certain parcels of real estate located in the counties hereinbefore named. In the deeds of the property so conveyed relevant to the issues here, a life estate was reserved in the grantor. In 1926

Simpson executed in Arkansas a last will and testament which in effect, confirmed the grants of the real estate theretofore made but included testamentary bequests to his wife Mary B. Simpson, appellee. Simpson died on the 13th day of August, 1941, at the age of 90, being at the time of his death a legal resident of Sequoyah County, Oklahoma. Thereafter the will was probated in the Courts of Oklahoma. In 1929 a lease was executed in the State of Arkansas by Simpson covering the real estate in Sequoyah County to the Tollers, appellees here, and McCraw as the remainder man under said deeds, as confirmed by the will, consented to the lease by joining in the execution thereof. The lease was on the crop-share plan, was to run for a period of five years, and was still in operation at the time of Simpson's death. A portion of the land was also prior to the death of Simpson operated under a contract with the United States Agricultural Administration involving crop payments to the owner during the year 1941. The causes here on appeal were instituted by Mary B. Simpson, individually and as Administratrix of the Estate of Hugh Simpson, for the primary purpose of setting aside the deeds and provisions of the will of Simpson and recovering the property, and seeking the right to all profits accruing under the leases. Issues were joined and the case tried to the Court which resulted in findings of fact and conclusions of law and judgment in favor of the Defendant McCraw as to all the issues, holding the deeds valid but with a life estate reserved to the grantor. Upon a motion for a new trial on behalf of Appellee, Mary B. Simpson, the Court made supplemental findings and conclusions with a judgment modifying the former judgment to the extent that the Appellee Simpson should be entitled to the rental crop benefits for the year 1941 in which Simpson died and which had not been paid over to him before his death. In all other respects the judgment, as to the ownership and possession of the lands in both counties, was confirmed in the Appellant McCraw. Inasmuch as no rents and profits seem to be involved in the property located in Hughes County we see no reason why it should be presented here on appeal and at least there is no reason why it should be considered further.

▇ The Appellant asserts that the Trial Court was without authority to modify its original findings and conclusions and judg-ment, but with the motion for a new trial before it on behalf of the then Plaintiff Simpson, there can be no doubt that the Court was clearly within its rights in modifying the judgment in accordance with the provisions of Rule 59, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

▇ The only remaining question in the case is the correctness of the Court's judgment in awarding the undistributed crop rentals to Simpson's legal representative for the year in which he died. The decision in this respect is based first upon the determination of whether or not the law of Oklahoma shall govern the transactions. The Oklahoma Statute provides that real property within the State is governed by the law of the State (Title 60, Section 21, O.S.1941); also that the validity and interpretation of wills concerning real property is governed by the law of the State (Title 84, Section 20, O.S.1941). In Oklahoma under the Statute, a contract is to be interpreted according to the law and the place where it is to be performed (Title 15, Section 162, O.S.1941), so that while the deeds, the will, and the lease in controversy here may have been executed in the State of Arkansas, they are clearly governed in construction and interpretation by the laws of the State of Oklahoma where the property was located, where the decedent resided, where the will was probated and whereby the terms of the lease it was to be performed. The rule in regard to the interpretation of contracts according to the law of the place of performance is confirmed by the Oklahoma decisions. Security Trust & Savings Bank v. Gleichmann, 50 Okl. 441, 150 P. 908, L.R.A.1915F 1203; Collins v. Holland, 169 Okl. 10, 34 P.2d 587; Sheehan Pipe Line Const. Co. v. State Commission, 151 Okl. 272, 3 P.2d 199.

▇▇ The only remaining point to be considered is what may be the Oklahoma law in regard to the disposition of crops growing upon the lands of a life tenant which have not been harvested and paid over to said life tenant prior to his death, originally characterized as emblements. Some states have positive statutes covering such a situation, other states do not, and Oklahoma appears to be in the latter class. The Oklahoma Statute provides that the common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall,

remain in force, in aid of the general statutes of Oklahoma (Title 12, Sec. 2, O.S. 1941). It would appear that under these circumstances the common law covering the situation, if it can be determined, should be applied. In this respect the Courts seem to generally agree that the common law is that where a tenant for life sows land he is entitled through his legal representative to the growing crops in case the estate terminates by his death before the produce can be gathered. Wilhoit v. Salmon, 146 Cal. 444, 80 P. 705; Bradley v. Bailey, 56 Conn. 374, 15 A. 746, 1 L.R.A. 427, 7 Am.St.Rep. 316; Keays v. Blinn, 234 Ill. 121, 84 N.E. 628, 14 Ann.Cas. 37. In other states the rule is the same but is regulated by statute. For example Ohio and Indiana.

It is therefore clear that the Trial Court did not err in applying the common law to the situation and awarding the undistributed crop benefits for the year in which the life tenant died, to his personal representative instead of the remainder man. The judgment of the Trial Court is affirmed.