No. 42,287

Tom Sprick, *Appellee* and *Cross Appellant*, v. Mabel I. Beach, *Appellant*.

(362 P. 2d 24)

Opinion filed May 13, 1961.

*George P. Nellans*, of Norton, argued the cause and was on the briefs for the appellant.

*A. W. Relihan, T. D. Relihan*, and *Terry E. Relihan*, all of Smith Center, were on the briefs for the appellee and cross appellant.

The opinion of the court was delivered by

Robb, J.: This is an appeal from the trial court's judgment in a declaratory judgment action where the facts were uncontroverted.

On June 2, 1949, Arthur G. Stockman by warranty deed conveyed to his daughter, Mabel I. Stockman, later Mabel I. Beach, the 240 acres of land in question reserving a life estate to himself.

On August 11, 1959, Arthur, while living with his only other

child, Stella Sprick, and her husband, conveyed his life estate to Stella's husband, plaintiff herein. In September, 1959, plaintiff actively engaged in farming the land. He entered the premises and using his own labor, equipment and seed, and preparing the land, planted fifty acres of wheat and seven acres of winter barley.

On February 22, 1960, Arthur died and on March 25, 1960, defendant notified plaintiff he had no further right to enter the land. She claimed full right and ownership to the growing crops. In July, 1960, the wheat and barley crops in controversy were harvested by plaintiff.

The trial court's judgment was stated as follows in its formal journal entry:

"The Court being of the opinion that the termination of the life estate does not destroy the right of the Plaintiff to go upon the lands for the sole purpose of tending and harvesting and gathering the crop of wheat and barley and that such right is hereby declared. The Court further finds and declares that the Plaintiff shall have the right to bale the straw from said wheat crop. That the wheat harvested shall be delivered to the nearest and best market and sold and the proceeds divided five-sixths to the Plaintiff and one-sixth to the Defendant and the straw when baled shall be divided in the same proportion with the share of the Defendant being left on the premises."

Hence this appeal and cross appeal which present the question of who owns the growing crops as between the grantee of a life estate and the remainderman, when the life tenant and grantor of the life estate dies.

Authorities are scarce on the point as to the protection afforded the remainderman after a life estate (*Kimberlin v. Hicks,* 150 Kan. 449, 455, 94 P. 2d 335) and this appears to be especially true in our jurisdiction because plaintiff challenges the applicability of the cases mentioned by defendant which we find are somewhat difficult to harmonize or apply. Furthermore, our research has produced no past decisions of this court that are particularly helpful in answering the question before us.

Defendant's first mentioned case is *Wyandt v. Merrill,* 107 Kan. 661, 193 Pac. 366, where we find plain and unambiguous rules announced. However, in the second case defendant cites (*Snodgrass v. Carlson et al.,* 117 Kan. 80, 230 Pac. 83), a rule was announced which at that time was not considered by the court to overrule entirely the pronouncements in the Wyandt case because of this language:

"To the extent that *Wyandt v. Merrill* tends to support a view in opposition to that herein expressed, it is disapproved." (p. 83.)

Defendant's last cited case is *Cooper v. Cyr,* 141 Kan. 236, 40 P. 2d 375, where this court quoted that which we have just quoted above from the Snodgrass case, and added,

"It appears that the case of *Wyandt v. Merrill* was expressly overruled." (p. 239.)

Deleting reference to the Wyandt case, the opinion in the Cooper case stated,

". . . the life tenant has an interest in the crop after it has commenced to grow which he might sell or which the owner might sell or mortgage and that his contract would be protected. It was a share that would descend or pass to the real owner whoever he might be.

"The life tenant's share may be apportioned by the district court in accordance with the laws of the state and the growth of the crop. The crop had grown from September to December 28, and may be apportioned and paid to the life tenant or the executor of his estate." (p. 239.)

The judgment in the Cooper case was accordingly reversed and the cause remanded with directions to apportion the rental in accordance with the rules expressed in the Snodgrass case. The trial court in our case apparently was trying to follow the apportioning theory of the Cooper case.

The cases defendant cites are different from our case because they involved leases and not outright sales. It appears a more definite rule than a theory of apportionment should be established for deciding these cases.

The doctrine of emblements pertaining to corn, wheat or other annually produced crops of the earth is of common law origin, and is one yardstick to be used in determining rights of the remainder interests as against assignees, lessees, grantees, personal representatives, etc., of the holder of a life estate at the time of the death of such life tenant. The following statements may be helpful:

"Under the common law, if the life tenant sows a crop and dies before its maturity, it goes to his personal representatives under the doctrine of emblements. . . . However, where the lessee's estate is terminated by the death of the life tenant, and he has planted a crop prior thereto, the lessee is entitled to harvest it under the doctrine of emblements. . . . To avail himself of this right the lessee must have some right of entry on the land itself and if the tenancy is determined by the death of the life tenant soon after the planting of the crops, this right may of necessity be continued for some months. This right of a lessee is not affected in any way by the fact that he had good reason to believe, or in fact did believe, that the estate would terminate before the crop could be harvested." (15 Am. Jur., Crops, § 26, p. 219.)

And further:

"The doctrine or right of emblements entitles one who holds land for a period subject to termination at a time which he cannot ascertain beforehand to remove from the land after the termination of his tenancy the annual crops or emblements which he has planted thereon prior to such termination, if the termination is brought about without any fault on his part or without any act of his intended to bring about such a result. The doctrine allows the tenant to enter upon the land, to cultivate his immature crops, and harvest them when they become mature, but this right is merely one of ingress and egress for necessary purposes. It does not constitute a right to the possession of the land. . . . The basis of the doctrine is the justice of assuring to the tenant compensation for his labor, and the desirability of encouraging husbandry as a matter of public policy." (15 Am. Jur. Crops, § 24, pp. 216, 217.)

In connection herewith, see, also, 31 C. J. S., Estates, § 40, p. 47.

Plaintiff seeks to have us apply and use the doctrine of emblements and cites *Bradley v. Bailey*, 56 Conn. 374, 15 Atl. 746, where it was held:

"The executor of a tenant for life is entitled to crops sown during his lifetime but maturing after his death.

"And it does not affect this right that the tenant for life was rapidly failing in health and had reason to expect his early death when the land was sown." (Syl.)

We believe that the foregoing is the most practical rule and adopt it for this jurisdiction. Anything stated in *Cooper v. Cyr*, supra, contrary to the views herein expressed is disapproved.

Applying the doctrine of emblements to our present case, we conclude that upon the death of the holder of the life estate, Arthur G. Stockman, after he had conveyed his life estate to plaintiff, plaintiff owned and had the right of entry to the land to harvest the mature wheat, barley and straw which had been planted prior to the death of Stockman.

The judgment is reversed and remanded with directions to enter judgment for plaintiff according to the views expressed herein.

Reversed and remanded with directions.