No. 44,141

WARREN W. CORBIN and HARRIET B. CORBIN, *Appellants*, v. VEVA MOSER, VIRGIL L. MOSER, EDWARD R. MOSER, EUNICE I. DALTON (also known as MRS. L. A. DALTON), MRS. M. S. WIKOFF (also known as ETHEL WIKOFF), W. H. COUTTS, JR., Guardian of the person and of the Estate of VEVA MOSER, an Incompetent Person, and W. H. COUTTS, III, Administrator of the Estate of Elizabeth Moser, Deceased, and the Unknown Heirs, Executors, Administrators, Devisees, Trustees, Creditors, and Assigns of Charles E. Moser, Deceased, *Appellees.*

(403 P. 2d 800)

Opinion filed July 10, 1965.

*Ervin E. Grant,* of El Dorado, argued the cause and was on the briefs for the appellants.

*Verne M. Laing,* of Wichita, argued the cause, and *Lester L. Morris, Ferd E. Evans, Jr., Ralph R. Brock, Joseph W. Kennedy, C. Robert Bell* and *Robert L. Driscoll,* all of Wichita, *W. H. Coutts, Jr.* and *W. H. Coutts, III,* both of El Dorado, and *Donald L. Allegrucci,* of El Dorado, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This appeal stems from a controversy over the construction of an oil and gas exception or reservation in a deed. The action was in the nature of a suit to quiet title.

There are no disputed facts. In 1926, Charles F. Moser and Lizzie, his wife, executed a deed to Margery Boston covering a quarter section of land:

". . . containing 160 acres more or less, according to Government Survey, except a one Sixteenth (1/16) Royalty interest of all oil, gas, or minerals in place on the West half of said Northwest Quarter (NW ¼) of said above described land, which oil, gas, and mineral is reserved to grantors; and also except the mineral rights on the East Half of said quarter, which have been heretofore conveyed away by grantors."

It will be noted that the reservation in question covers only the west one-half of the quarter section. At the time the reservation was created the land was covered by an oil and gas lease. Following some five conveyances by deed the plaintiffs became the owners of the land. It will be mentioned, for what it is worth, that only two of the five deeds referred to the reservation.

Charles F. Moser died on April 25, 1944, leaving a last will and testament which did not specifically mention any royalty interest in the real estate in question, nor were any royalty interests or other mineral interests inventoried or appraised in the estate. Elizabeth Moser died on the 4th day of March, 1960, without a will, and the inventory listed "a one sixteenth royalty interest of all oil, gas, or minerals in place on the West Half (W ½) of the Northwest Quarter (NW ¼) of Section 26, Township 26 South, Range 4 East. . . ."

The trial court found that the Moser deed reserved a mineral interest in the land and "that through mistake or inadvertence the mineral interest should be one-half rather than the one-sixteenth mentioned. . . ."

The plaintiffs, the present landowners, have appealed.

Before considering the merits of the appeal we must give attention to the appellees' motion to dismiss the appeal because of appellants' alleged failure to comply with K. S. A. 60-2103 (a) and 60-258.

At the risk of unduly extending this opinion, it is necessary to state the procedural facts which brought about the dispute.

On October 16, 1963, the case was tried to the court. Later briefs were filed and on February 10, 1964, the trial court mailed a letter to counsel of record which read, insofar as material here, as follows:

"The court further finds that the deed of the date of September 23, 1926, wherein Charles F. Moser and Lizzie Moser, his wife, were grantors and Margery J. Boston was the grantee, said warranty deed being recorded in Volume 157 of Deeds at page 603 in the office of the Register of Deeds of Butler County, Kansas, reserved a mineral interest in the real estate. The court further finds that through mistake and inadvertence the mineral interest should be one-half rather than the one-sixteenth mentioned herein and that because of this Charles F. Moser, his heirs and assigns own an undivided one-half in the minerals under the West half of the property. . . .

. . . . . . . . . . . . . . . . .

"Costs are to be assessed against Plaintiff."

On March 9, 1964, the trial court addressed another letter to counsel which read:

"As attorneys for the respective parties and supplementing my written memorandum opinion of February 10, 1964, I hereby direct that the form of the judgment rendered herein on February 10, 1964, is to be settled by a journal entry to be prepared by the parties who shall submit the same to me for signature, and I shall then file it with the Clerk of the District Court. In view of the fact that this is a quiet title action and will appear on abstracts, I am directing that the judgment be entered in this manner."

It appears this letter was mailed only to local counsel.

On July 9, 1964, the journal entry of judgment was filed. The notice of appeal was filed August 4, 1964. The appellees contend that the letter of the court dated February 10, 1964, constituted the judgment of the court and that the appeal was not taken in time.

We must examine the statutes. The time for appeal is governed by the provisions of K. S. A. 60-2103 (a) which, with certain exceptions not material here, reads:

"*Appeal to supreme court.* (a) *When and how taken.* When an appeal is permitted by law from a district court to the supreme court, the time within which an appeal may be taken shall be thirty (30) days from the entry of the judgment, as provided by section 60-258, . . ."

K. S. A. 60-258 (a) provides in part:

". . . When the judge directs that a party recover only money or costs or that all relief be denied, the clerk shall enter judgment forthwith upon receipt by him of the direction; but when the court directs entry of judgment for other relief, the judge shall promptly settle or approve the form of the judgment and direct that it be entered by the clerk."

K. S. A. 60-258 (b) further provides:

"If judgment is to be entered on the verdict of a jury, or by direction of the judge forthwith, the clerk shall make a notation of the judgment on the appearance docket as provided by section 60-2601, and such notation shall constitue the entry of judgment, and no journal entry or other document shall

be required to render the judgment effective. If the judge directs that the form of the judgment is to be settled by a journal entry or other document, it shall be prepared in accordance with the directions of the judge who shall then sign the same and cause it to be filed with the clerk. Such filing shall constitute the entry of the judgment, and it shall not be effective before such filing. The clerk shall forthwith note the filing of the journal entry on the appearance docket together with a brief abstract of the nature of the judgment."

It will be noted that the only instance in which the clerk enters judgment without the direction of the trial judge is on a jury verdict. Otherwise the judge is to direct the clerk as to the judgment to be entered. The judgment cannot be entered until the judge directs, and the judgment is not effective until entered on the appearance docket.

The entry in the appearance docket governs the effective date of all judgments, except judgment by journal entry becomes effective when filed with the clerk but the clerk is directed to docket such judgments immediately.

A simple examination of the appearance docket would have determined this procedural question. The record is silent as to what disposition was made of the February 10, 1964, letter.

We have requested the clerk of this court to contact the clerk of the district court for the purpose of determining what disposition was made of the letter. We are informed that the decision indicated in the letter was never entered on the appearance docket and that the judge never directed the clerk to so enter it. No judgment was entered in the appearance docket until the journal entry was filed July 9, 1964. Until that time there was no judgment from which to appeal. It necessarily results that an appeal filed within thirty days from that date was in time.

The purpose of K. S. A. 60-258 is to fix a time certain when a judgment becomes effective and to fix a place certain where counsel may determine the effective date.

There is no merit in appellees' motion to dismiss the appeal.

We now reach the merits of the appeal and have for determination a single question—what interest is expected or reserved by the language "a one-sixteenth royalty interest of all oil, gas, or minerals in place?"

When one not familiar with the language of the oil and gas industry attempts to convey an interest in oil or gas, ambiguities and confusion usually result and we are left without a guide to the scrivener's intention. We search previous decisions for aid

in construction. However, we seldom find the same confusing language twice used and previous cases are of little assistance. This court has on many occasions defined both oil and gas royalties and mineral interests. However, the definitions are of little assistance when the scrivener comingles the words which are used in distinguishing the two interests.

The difference between a mineral interest and a royalty interest is discussed in *Hickey v. Dirks,* 156 Kan. 326, 133 P. 2d 107. We stated:

"As we have had frequent occasion to observe, terms relating to conveyances of oil and gas interests have often been loosely and inaccurately used. (*Volker v. Crumpacker,* 154 Kan. 403, 405, 118 P. 2d 540, and cases there cited.) This is particularly true with reference to the term 'royalty.' A mineral deed is one which involves a severance, from the fee, of a present title to minerals in place. It either effects such severance of title in the first instance or conveys a part of such mineral ownership previously carved from the fee. It is a realty conveyance. (*Rathbun v. Williams,* 154 Kan. 601, 604, 121 P. 2d 243, and cases there cited.) 'Royalty' is that part of oil and gas payable to the lessor by the lessee out of oil and gas produced. It is sometimes referred to as part of the compensation to the title owner for the privilege of exploring, developing, and producing oil and gas from the tract. Under our statutes and decisions it is regarded as personal property. (G. S. 1935, 79-329, 79-330; *Rathbun v. Williams,* supra; *Davis v. Hurst,* 150 Kan. 130, 90 P. 2d 1100, and cases there cited.)" (p. 327. See also, *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.,* 189 Kan. 125, 368 P. 2d 19.)

We have no difficulty in determining the extent of the royalty interest reserved. The landowner's royalty is customarily considered as one-eighth of all of the oil or gas produced. This is commonly styled the landowner's one-eighth royalty. If the landowner conveyed a one-sixteenth of his one-eighth royalty he would have conveyed a one-sixteenth of one-eighth or a one-one-hundred and twenty-eighth of all the oil and gas produced. However, if he had conveyed a "one-sixteenth royalty interest," this would be one-half of the landowner's royalty. Such was done in this case. The distinction between "one-sixteenth royalty interest" and "one-sixteenth *of* the royalty interest" is the decisive factor. We do have a precedent for this conclusion. In *Bellport v. Harrison,* 123 Kan. 310, 255 Pac. 52, this court considered an instrument which read:

"Received of A. J. Bellport, $2,400, payment for 1/16 royalty [on land described] . . ." (p. 311.)

We stated in the opinion:

". . . There is no controversy in this case as to the meaning of the fraction one-sixteenth. It is one-half of the land owners' one-eighth provided for in the lease." (p. 315.)

Appellants next contend that the trial court erroneously concluded that the language of the reservation created a mineral interest in the oil and gas. We are forced to agree with appellants' contention.

The language "except a one-sixteenth royalty interest of oil and gas" clearly constitutes an exception of a royalty interest and there was an oil and gas lease on the land to support the excepted royalty. However, we cannot see how the addition of the phrase, following a comma, "or minerals in place" could be interpreted as a reservation of a one-half mineral interest.

The trial court's statement "that through mistake and inadvertence the mineral interest should be one-half rather than one-sixteenth mentioned" is rather a violent presumption. There is no substantial evidence supporting any particular presumption.

The language creating the reservation makes no reference to a right to operate or develop, or any right of ingress or egress to and from the premises. These are rights that tend to reflect a mineral interest and are necessary adjuncts to its full enjoyment. In *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.,* supra, we stated:

". . . Likewise, the remaining portion of the second clause, 'or operations for any such mineral are being conducted thereon by grantees or grantor (their Successors or assigns),' tends to confirm that conclusion. Unless that language is meaningless, it constitutes further evidence that the defendant reserved minerals in place with the right of either party or their successors or assigns, upon the expiration of the Jennings leases, to conduct operations for the production of the minerals, jointly or individually, and if conducted by the defendant individually, the 'right of ingress and egress' reserved in the first clause afforded it a means to enter upon the property for that purpose. As previously noted, a royalty interest does not carry the right to explore for and remove the minerals in place, and the right to conduct operations upon the land would be a useless right if all that was reserved was only royalty or a share of the proceeds of the production from the land." (p. 132.)

Both parties have cited numerous cases for our consideration. This is a situation, however, where comments in judicial opinions on language not identical cannot help us much.

Insofar as we hold that a royalty interest was reserved there is no particular ambiguity in the language used. It is only when we attempt to extend the reservation to cover a mineral interest that the language used becomes inadequate and ambiguous.

Since the parties to the deed are dead and there is no aid outside the instrument for discovering the intention of the parties, we

are forced to apply the general rule that where an ambiguity exists so that a deed is capable of two possible constructions the one most favorable to the grantee will be selected. We find the rule stated in 16 Am. Jur., Deeds, § 165, p. 530, as follows:

"The general rule is well settled that if there is any ambiguity in a deed so that it is capable of two possible constructions, one of which will be more favorable to the grantee, the other of which will be more favorable to the grantor, that method of construction which will be more favorable to the grantee will be selected and the deed will be construed against the grantor. All doubts, therefore, are to be resolved against the grantor. This rule is statutory in some jurisdictions. The rule is predicated upon the reasoning that since a grant is expressed in words of the grantor's own selection, it is, prima facie, an expression of his intention, and he is therefore chargeable with the language used. If, therefore, the deed can inure in different ways, the grantee, it is said, may take it in such way as will be most to his advantage." (See, also, C. J. S., Deeds, § 140 [2], p. 1010.)

In *Keller v. Ely*, 192 Kan. 698, 391 P. 2d 132, we stated at page 702 of the opinion:

"Generally speaking, a deed is to be construed strictly against the grantor, and to confer upon the grantee the greatest estate that its terms will permit. Our statute, G. S. 1949, 67-202, provides:

" '. . . and every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant.' "

We are forced to conclude that the language in the deed reserved a royalty interest in the grantor and not a mineral interest.

The judgment is reversed.

APPROVED BY THE COURT.