(571 P.2d 58)
No. 48,626

GLENDON E. REWERTS, PAUL R. WUNSCH, and JOYCE N. SHELTON, formerly JOYCE N. HOARD, *Appellees,* v. ELBERTA WHITTINGTON, PAMELA A. NEWELL STAPLES, RANDALL K. NEWELL, MARVIN BLUHM, Executor of the Estate of Bertha Hoard, Deceased, DARWIN R. FRANCIS, RICHARD HOLLAND and GLENN H. FORD, *Appellants.*

Petition for review denied September 29, 1977.

Opinion filed August 12, 1977.

*Ronald D. Albright* and *William H. Yandell,* of Anthony, for the appellants.

*Robert S. Wunsch* of Wunsch, Wunsch and Gaumer, of Kingman, and *Glendon E. Rewerts,* of Leoti, for the appellees.

Before SPENCER, P.J., PARKS and SWINEHART, JJ.

SPENCER, J.: In an action for partition of farm lands in Harper, Greeley, and Wichita counties, it was determined that during the lifetime of Bertha Hoard she owned an undivided one-half interest in those lands absolute, and was the life tenant in an undivided one-half interest in the same land, with the remainder over to the plaintiffs Shelton, Rewerts, and Wunsch.

Bertha Hoard died and her life estate in the land terminated on July 17, 1974. The defendant Marvin Bluhm is the executor of the will of Bertha Hoard, deceased. The defendants Elberta Whittington, Pamela A. Newell Staples, and Randall K. Newell are

devisees under the will of Bertha Hoard, deceased, of the undivided one-half interest she held in fee. All of these parties will hereinafter be referred to as defendants.

The defendants Darwin R. Francis, Richard Holland, and Glenn H. Ford were the farm tenants on certain of the land so owned in common, and each has filed a disclaimer of interest as to the issues on appeal. Each was to deliver a one-third share of the crop as rent. These parties will hereinafter be referred to as the tenants.

After this action was filed, but before judgment in partition was entered, the trial court held a hearing on the issues of whether the farm tenants had the right to harvest the 1975 wheat crop which had been planted after Mrs. Hoard's death, and whether plaintiffs or defendants were entitled to receive the landlord's one-third share of the crop to be harvested in 1975 from the plaintiffs' undivided one-half interest.

On March 11, 1975, the trial court filed a letter decision finding that the tenants had the right to harvest the 1975 crop, and that the plaintiffs were entitled to one-half of the rent from the 1975 crop, which represented the entire crop share due the landlords from their undivided one-half interest in the lands.

On August 20, 1975, the parties announced to the court that they had agreed upon a partition of the real estate in kind and asked the court to divide the land accordingly. The court then entered its judgment partitioning the lands as agreed, and a journal entry of that judgment was filed on that date. This journal entry incorporated the previous decision of the court as to the right of the tenants to harvest the crop and the right of the plaintiffs to receive one-half of the crop rent. On that same date, the defendants filed their notice of appeal from the ruling which awarded one-half of the crop rent to the remaindermen, plaintiffs herein.

On October 3, 1975, plaintiffs filed a motion to require Bluhm, as executor of Mrs. Hoard's will, to pay the 1974 taxes on their land. The basis of this claim was that Mrs. Hoard had received all of the 1974 income from the land when she received the rent from the 1974 wheat crop, which was harvested before her death. In a memorandum decision dated October 20, 1975, filed October 22, 1975, the court sustained this motion. An order to this effect was filed January 15, 1976, and on that same date the defendants filed a notice of appeal from that order.

Before consideration of the issues regarding entitlement to the crop rent and the payment of the 1974 property taxes, we are confronted with plaintiffs' motion to dismiss the appeal as untimely. Plaintiffs contend that judgments as to these issues were rendered, respectively, by the letter decision of the trial court on March 11, 1975, and the memorandum decision on October 22, 1975, as neither document directed that judgment be settled by journal entry. Thus, the notices of appeal which were filed August 20, 1975, and January 15, 1976, were out of time and this court lacks jurisdiction.

Appellate jurisdiction is a matter of statute. *Henderson v. Hassur*, 1 Kan. App.2d 103, 562 P.2d 108. K.S.A. 60-2103(*a*) provides that an appeal may be taken within thirty days "from the entry of the judgment, as provided by K.S.A. 60-258. . . ." Under K.S.A. 60-258 [Corrick], a judgment in cases not involving a jury verdict is not "entered" within the meaning of K.S.A. 60-2103(*a*) until it is entered on the appearance docket at the judge's direction, or until a journal entry is filed with the clerk, in which case the clerk is directed to immediately note the filing of the journal entry on the appearance docket. *Corbin v. Moser,* 195 Kan. 252, 403 P.2d 800. In *Corbin,* the court considered whether a trial court's letter decision, not specifying the form of judgment, could be the "entry of judgment." A second letter had directed that judgment be by journal entry and such was filed some six months after the date of the first letter. The court stated that the matter could be simply determined by an examination of the appearance docket. The record being silent in this regard, inquiry was made of the clerk of the district court who reported that the decision indicated by the first letter had never been entered on the appearance docket, and that the judge had not so directed. It followed that the judgment had not been "entered" until the later journal entry had been filed.

In this case, the appearance docket has been received from the district court. It indicates under date of March 11, 1975, "Letter from Judge Stewart," and under October 22, 1975, "MEMORANDUM DECISION." Neither of these notations indicates the filing of a journal entry or the form of judgment, and it does not appear that the trial judge directed the entry of either of them. We conclude that neither of the notations reflects the entry of judg-

ment. Under date of August 20, 1975, the appearance docket indicates "JOURNAL ENTRY OF JUDGMENT," and under January 15, 1976, "ORDER TO PAY TAXES." It follows that the judgments were not entered until the filing of the journal entry on August 20, 1975, and the Order on January 15, 1976. The appeals are timely.

Defendants seek to invoke the doctrine of emblements in support of their claim that they are entitled to all of the landlord's share of the 1975 crop on all of the land. The doctrine of emblements comes into play when a life tenant of farmland dies before certain annual crops have been harvested. Under the common law, if the life tenant sows a crop and dies before it matures, the crop goes to his personal representative. *Sprick v. Beach,* 188 Kan. 296, 362 P.2d 24.

The rule as to the application of the doctrine of emblements with respect to claims of the estate of a life tenant and those of a remainderman to shares of a crop paid as rent is stated in *Finley v. McClure, Administratrix,* 222 Kan. 637, 567 P.2d 851, as follows:

"Where a life tenant leases farmland with the rent to be paid with a share of the crop to be raised on the land by the lessee and the life tenant dies after the crop is planted but before the crop is harvested, the estate of the life tenant is entitled to the entire crop rent, and the remainderman takes none of it." (Syl. 2.)

The precise issue here presented is whether the estate of the life tenant is also entitled to the entire crop rent when the life tenant dies before the crop is planted, but after extensive preparatory work on the land has been done.

Defendants argue that the limitation of the doctrine to crops planted before the death of the life tenant is no longer justified in light of modern farming practices "where the vast bulk of the work is performed before the seed is even introduced into the seed bed. . . ." In this regard, they limit their appeal to the land in Greeley and Wichita counties, which is in the summer fallow zone. They point out that as to these lands "each crop . . . in effect, uses the rains from two years and farming operations for two years. . . ."

The rule that the life tenant's estate is entitled to the entire crop rent when the crop is planted before his death is said in *Finley* to be based on the rule that "under existing Kansas law his ownership in the landlord's share of the crop attaches after the crop is

planted and his inchoate interest is one which he may sell before maturity of the crop and which ripens into full ownership with such maturity. . . ." (222 Kan. at 642.) See also K.S.A. 58-2525; K.S.A. 60-1206; *Pederson v. Russell State Bank, Executor,* 206 Kan. 718, 481 P.2d 986. In Annotation, 47 A.L.R.3d 784 at 789, the rule is stated:

" . . . Under the common law, the right to emblements in regard to annual crops does not attach until the crop has been seeded, no matter how much labor and expense may have been incurred in planning the crop and preparing the seed bed. Conversely, it is held that so long as the crop was seeded before the death of the life tenant, it matters not how little effort went into the preparation and seeding, or that it was done hurriedly and in an unhusbandlike manner with knowledge that the death of the life tenant was imminent. Of course, the care with which the crop was seeded may be indicative of whether the person was actually planting a crop or only pretending to do so."

In *Finley,* the crop was planted two weeks before the life tenant's death. In the present case, the record does not reveal the date of planting, but all are agreed that it was after the death of the life tenant. Since under Kansas law the rights of the landlord in a crop do not attach until after planting, we hold that the estate of the life tenant can have no interest in the crop planted after the death of the life tenant.

The defendants also challenge the order of the court that Mrs. Hoard's estate pay all of the 1974 taxes on the undivided one-half interest in the land owned by the plaintiffs. We are reminded that Mrs. Hoard died July 17, 1974, and defendants refer to K.S.A. 79-1804, which provides in part:

"All taxes shall be due on the first day of November of each year. A lien for all taxes shall attach to the real property subject to the same on the first day of November in the year in which such tax is levied. . . ."

and to K.S.A. 79-1805, which provides in part:

"As between grantor and grantee of any land, where there is no express agreement as to which shall pay the taxes that may be assessed thereon, if such land is conveyed on or after the first day of January and before the first day of November, then the grantee shall pay the same; if conveyed on or after the first day of November and before the first day of the next ensuing January, then the grantor shall pay them. . . ."

In essence, defendants argue that since the 1974 taxes were not due and payable until November 1, 1974, plaintiffs as owners of an undivided one-half interest should pay the taxes on their interest.

The trial court recognized the statutes, but concluded that, in equity, the estate should pay all of the 1974 taxes since the decedent had received all of the 1974 crop rent.

Differing views have been set out at 51 Am.Jur.2d, Life Tenants and Remaindermen § 251 at 534-535:

"In some jurisdictions, the position has been taken that taxes are not apportionable, and, under such view, the life tenant or his estate is liable for taxes if he is alive on the day the taxes become a lien, although he dies before the expiration of the period covered by the taxes.

. . . . . . . . . . . . . . .

"[Likewise] [w]here a life tenant dies before a tax falls due, the view has been taken that his estate is not liable for any part of the tax, and that there is no apportionment."

On the other hand:

"In some jurisdictions the rule has been established that if a life tenant or beneficiary dies before the expiration of a year for which taxes are levied, the tax is to be apportioned between the life tenant and the remainderman. . . ."

The rule of apportionment "by the period of possession" is supported in Simes & Smith *The Law of Future Interests* 2d ed., § 1693, p. 34 (1956) (recognizing contra authority), and Restatement of Property § 129, comment *g*.

The issue here presented is the subject of Annotations at 17 A.L.R. 1384 at 1397-1398; supplemented 94 A.L.R. 311 at 320, and 126 A.L.R. 862 at 869-870.

The case of *Trust Company of Georgia v. Kenny,* 188 Ga. 243, 3 S.E.2d 553 (1939) held that taxes should be apportioned between the estate of the life tenant and the remaindermen when the life tenant dies during the year. This was so even though the lien for the taxes attached on January 1. The court noted that the property there involved was located in the city and that the life tenant had not received income in advance before his death. Of interest to the present case, however, the court went on to say:

". . . In the case of farm property, where the life-tenant dies during the taxable year and the other facts are such as to entitle the legal representative to emblements, it may be that the taxes should ordinarily be charged in whole to the life-estate, as between that estate and the remaindermen. . . ." (188 Ga. at 246.)

In the present case, there is no question that the entire 1974 crop rent went to the life tenant. The mere fact that the taxes for 1974 did not become a lien upon the land until November 1 of

that year (K.S.A. 79-1804) does not prevent those taxes from becoming an equitable charge against one who has received all of the annual income from the land, even though his or her estate in the land terminated prior to the attachment of the lien. K.S.A. 79-1805 might provide a different result in the situation of a grantor-grantee, but such is not here involved. We hold that the trial court did not err in requiring the estate of Bertha Hoard to pay the 1974 taxes on the lands to which plaintiffs succeeded on July 17, 1974, since Mrs. Hoard had received all of the 1974 income from that land.

Judgment affirmed.