No. 45,909

Jerome N. Pederson, *Appellant*, v. The Russell State Bank, Executor of the Estate of Hannah Roubach, Deceased, *Appellee*.

(481 P. 2d 986)

Opinion filed March 6, 1971.

*Rex L. Culley,* of Russell, argued the cause, and *John C. Woelk,* of Russell, was with him on the brief for the appellant.

*Marvin E. Thompson,* of Thompson, Holland and Arthur, of Russell, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: The question presented by this appeal is who, as between the executor and a devisee, in the absence of any direction under a will, is entitled to the crops growing on specifically devised lands as of the date of the decedent's death.

Hannah Rouback died testate on November 15, 1966. Her will was admitted to probate and the Russell State Bank was appointed executor on the 27th day of December, 1966.

Under her will four quarter sections of land in the state of Kansas were devised to Jerome N. Pederson, the appellant herein.

On the date of the testatrix' death, part of the land devised to Pederson had a growing crop of wheat which was sowed in September, 1966. The lands on the date of decedent's death were subject to an agricultural lease under which the decedent was to receive:

". . . as rental for said crop land, one-third (⅓) of all grain crops raised on said premises in marketable condition at market, free of expenses to first party [Hannah Rouback] or in the bin or granary on the farm, as first party may choose."

It is admitted by the appellant the decedent's interest in the growing wheat was separately inventoried and appraised as a *personal asset* of her estate, and was not included as a part of the real estate devised to him.

The growing wheat was harvested in the summer of 1967 and later sold for $900.72.

Procedurally, in the probate court the executor petitioned for partial distribution of the decedent's estate, which appraised at $1,175,778.70. The order of partial distribution set over to the appellant the four quarter sections of land, oil runs of $8,285.73, agricultural income in the amount of $1,093.27, less taxes and expenses paid of $1,821.36, thereby distributing to the appellant net income withheld by the executor in the sum of $7,557.64. The agricultural income, however, did not include the sum of $900.72 received by the executor for the sale of the one-third share of the wheat harvested from the land devised to Pederson.

Pederson thereupon petitioned the probate court for the payment of farm rental in the sum of $900.72 alleging the facts. He alleged the executor refused to pay the rental proceeds from the sale of the one-third interest in the 1967 wheat. The contract and lease covering the land devised to the appellant was attached to his petition.

Following the executor's answer to the petition for allowance of claims, the parties by agreement transferred the matter to the district court, where, after hearing, the claim was denied and appeal duly perfected.

K. S. A. 59-1206 provides:

"Annual crops, whether severed or not from the land of the decedent at the time of his death, shall be deemed *personal assets* in the custody of the executor or administrator and shall be inventoried and administered as such." (Emphasis added.)

The statute is clear, not only are growing crops deemed "personal assets," but they "shall be inventoried and administered as such."

These personal assets would obviously be administered in accordance with the provisions of the decedent's will.

The appellant admits the devise of the four quarter sections of land to him did not, by the terms of the will, include the growing crop of wheat. The will devised the residue of the estate in the following language:

"All of the rest, residue and remainder of my estate, whether real, personal or mixed, and wheresoever found or situate, that I may own at my death, I give, devise and bequeath to Russell State Bank, of Russell, Kansas, in a perpetual trust, . . ."

In accordance with the statute (59-1206, *supra*) the growing wheat crop was inventoried as a personal asset. To administer it as a personal asset, the growing wheat crop could only pass as a part of the residue of the estate in accordance with the above quoted portion of the decedent's will.

The rule of law expressed by 59-1206, *supra*, has always been in force in this state. In *Kesler v. Heberling*, 113 Kan. 571, 213 Pac. 639, it was held:

"As between executor and devisee, on the death of the testator, crops growing on the land devised go to the executor as assets in his hands under section 4524 of the General Statutes of 1915." (Syl.)

The statute then applicable was not as explicit as 59-1206, *supra*. It only provided that annual crops "shall be assets in the hands of the executor or administrator, and shall be included in the inventory." The present statute explicitly provides that such crops shall be personal assets and "inventoried and administered as such."

*Kesler* was followed in *Blakely v. Blakely*, 115 Kan. 644, 224 Pac. 65, where the court held the growing crops, grown by a tenant on land belonging to a testator, and harvested and sold after his death, belonged to the estate, and not to the devisee of a life estate to whom was devised "'the use of all my property, both real and personal, with the rents, issues, profits and proceeds thereof.'" (p. 644.)

The appellant concedes under the applicable rule in Kansas, prior to the adoption in 1965 of the Uniform Principal and Income Act, the growing crops here in question passed to the executor. But the appellant argues the Uniform Principal and Income Act, K. S. A. 1970 Supp. 58-901, *et seq.*, changed the rule.

The appellant contends the question, as to who is entitled to growing crops, is governed by the Uniform Act.

The Uniform Act is *general.* Its broad purpose is to provide rules for the guidance of fiduciaries to determine what is principal and what is income, to determine who is entitled to the principal and who is entitled to the income, and to determine the allocation of expenses to each.

By the provisions of K. S. A. 1970 Supp. 58-914, the act is made applicable to decedents' estates.

By K. S. A. 1970 Supp. 58-904 (*a*), an income beneficiary is entitled to income from the date the assets become subject to the trust, which in the case of a testate estate, is the date of death.

Under K. S. A. 1970 Supp. 58-904 (*b*) (2), receipts in the form of *periodic payments, including rent,* are to be apportioned to principal as of the date of the decedent's death, and to income from the date of death.

K. S. A. 1970 Supp. 58-904 (*c*) provides:

*"In all other cases, any receipt from an income producing asset is income even though the receipt was earned or accrued in whole or in part before the date when the asset became subject to the trust."* (Emphasis added.)

K. S. A. 1970 Supp. 58-904a (*b*) (1) provides that income from specifically devised property, after the death of the testator, goes to the specific devisee.

Under K. S. A. 1970 Supp. 58-903 (*a*), income includes:

". . . return in money *or property* derived from the use of principal, including return received as

"(1) rent of real or personal property. . . ." (Emphasis added.)

By K. S. A. 1970 Supp. 58-907 (*b*), generally accepted accounting principles are to be used in determining income from farming operations.

K. S. A. 1970 Supp. 58-901 defines an "Income beneficiary" as the person to whom income is presently payable or for whom it is accumulated for distribution as income; and it defines a "Remainderman" as the person entitled to principal, including income which has been accumulated and added to principal.

The appellant contends he is in the position of an "Income beneficiary." He argues the point at issue is the ownership of a fund in the hands of the executor. He contends the fund was not in being at the decedent's death but comes from an asset of the decedent, the land devised to the appellant.

The appellant relies primarily upon 58-904 (*c*), *supra.* He argues the landlord has an interest in the crop before it matures when rent is payable in shares. (Citing *Bank v. Equity Exchange,* 113 Kan. 696, 216 Pac. 278; and *Will v. Hughes,* 172 Kan. 45, 238 P. 2d 478.) Under this subparagraph any receipt from an income producing asset is income even though the receipt was earned or accrued in whole or in part before the asset became subject to the trust. He contends the receipt (the right to rent payment) either accrued in whole upon planting the wheat, subject to later harvest, or it had accrued in part at the death of the testatrix, as the crop matured subject to its later harvest and sale.

In either event, the appellant argues:

". . . the right of the decedent to a share of the crop vested upon planting the wheat. The right to rent was then absolute. The unknown or indeterminate was the amount to be paid, whether in bushels or dollars, not whether rent was payable. The fact the amount later to be paid was not then fixed or liquidated is entirely unrelated to the accrual of the right to be paid. (See *Bank v. Equity Exchange,* 113 Kan. 696, 698, 216 Pac. 278.) Whether the income was earned wholly or only partially prior to the death of the testator would not defeat the right of the devisee of the land to income. It was partially, if not wholly, earned or accrued on testator's death."

In the alternative, the appellant argues, if 58-904 (*c*), *supra,* is not held applicable, the provisions of 58-904 (*b*) (2), *supra,* apply on the ground that "the rent paid pursuant to contract was a periodic payment of rent."

Under this provision the receipts are treated as accruing from day to day, the part accruing before death is principal; that accruing after death is income.

The appellant argues:

"The lease in this action was not strictly a farm lease covering crop land. The agreement covered a three year term. It pertained to personal services, use of residential property, contained cash rent provisions and a crop land agreement for which grain rent applied. The rents of whatever kind were payable at yearly intervals and were paid at those intervals. It is improper to separate out of the lease that portion pertaining to the four quarters of land and the grain rent payable therefor and take the position that because this rent was payable in kind the Probate Code requires it to be treated as personal property, going to the executor. In fact, the executor would be required to look to the entire lease for enforcement of whatever rights the estate had vis a vis the tenant. Had there been default in payment of cash rents there could be little argument that these were rents due and payable periodically.

"The tenant made payments as required under the lease, both in cash and one crop payment for grain harvested in 1966. Payments for 1967 were not

due until after testator's death in November, 1966. This death does not change the periodic nature of the payments required. No place in the statute is there a suggestion as to what interval is required to qualify as a 'periodic payment' of rent. No reason suggests itself that yearly payment of rent is not periodic payment in the same manner that monthly or weekly payment would be considered periodic payment of rent. A lease for a term of years with rent to be paid at intervals throughout the term, though the intervals be yearly, meets the literal requirement of the statute. Thus, the rents required under the present lease were periodic payments of rent within the meaning of sub-paragraph (b) of Section 904."

The matter presented is one of first impression. We have been cited to no cases in point, nor has our research disclosed any. The appellant contends that inferentially *In re Estate of Cline,* 170 Kan. 496, 227 P. 2d 157, comes close. Factually, the case is inapplicable because it deals with a lease for gravel (a part of the land) which was not removed from the land upon which the decedent gave a lease until after his death. The gravel was not inventoried as a part of the decedent's estate. Thereafter $534.83 in royalty was paid to the executor for the extraction of gravel after the decedent's death. The court held the devisee was entitled to the payment of such royalty.

The appellee concedes that the Uniform Act applies to the decedent's estate, but argues that it applies "only as the Act itself so indicates. Nothing in the Act requires a conversion of assets to income."

The legislature many years ago recognized the knotty problem encountered in dealing with crops growing on the land of the decedent at the time of his death in the administration of estates. As a result a specific statute was enacted (59-1206, *supra,* and its predecessors) to clarify the handling of annual crops by an executor or administrator. The Uniform Principal and Income Act is a statute of general application, dealing with the subject of allocation of receipts between principal and income.

Assuming without conceding the appellant's contentions with respect to the Uniform Act are correct, a conflict would exist between the provisions of 59-1206, *supra,* in the probate code and the Uniform Act. The rule of construction between seemingly conflicting statutes is clear. In *Sherman County Comm'rs v. Alden,* 158 Kan. 487, 148 P. 2d 509, it is held:

"The terms of a statute dealing with a specific subject are controlling as against divergent provisions of a statute having more general application." (Syl. ¶ 2.)

Furthermore, again assuming without conceding the appellant's contention with respect to the Uniform Act is correct, it would require this court to hold that the Uniform Act repeals 59-1206, *supra*, by implication. The rule under these circumstances is stated in *Ferrellgas Corporation v. Phoenix Ins. Co.*, 187 Kan. 530, 358 P. 2d 786, as follows:

"Where it is contended that a later statute has repealed an earlier statute by implication, it is noted that repeal by implication is disfavored, and such a repeal is not to be found when both statutes may operate independently without conflict." (Syl. ¶ 4.)

In our opinion repeal by implication is not indicated. There is no conflict between 59-1206, *supra*, and the Uniform Act, if it be recognized that as to annual crops, the Uniform Act merely starts where the specific provision of the probate code leaves off.

Under the probate code these annual crops were "personal assets." They were not specifically devised or bequeathed.

In the probate code under K. S. A. 1970 Supp. 59-1201, the representative of the decedent's estate makes an inventory "of all real estate and tangible personal property owned by the decedent . . . in the state of Kansas and of all intangible property owned by the decedent . . . wherever located which shall come to his possession or knowledge." A supplemental inventory is required for subsequently discovered assets (K. S. A. 59-1203); debts discharged by a will are included "in the inventory of the assets of the decedent" (K. S. A. 59-1204); debts owing by the executor are "included among the assets of the decedent in the inventory" (K. S. A. 59-1205); and last but not least, "Annual crops, whether severed or not . . . shall be deemed personal assets in the custody of the executor or administrator and shall be inventoried and administered as such." (K. S. A. 59-1206.)

Under the probate code all of such items of property comprise the *"assets"* of the estate.

The Uniform Principal and Income Act then becomes operative upon these assets, so inventoried, as required by the probate code. Thus, under K. S. A. 1970 Supp. 58-903 (*a*) (3), "income earned during administration of a decedent's estate" is distributed to specific devisees in accordance with 58-904a (*b*) (1). But it must be "income" before it becomes so distributable.

Clearly, if the receipt of money or property is an original asset of the decedent's estate, it cannot become "income *from the*

*assets* of a decedent's estate," as that phrase is used in 58-904a (*b*). (Emphasis added.)

Insofar as the Uniform Act applies to decedents' estates, income earned during administration is clearly limited. Under 58-903 (*a*), *supra,* "Income is the return in money or property derived from the use of principal." But such "return" received as income earned during administration is by 58-903 (*a*) (3), *supra,* governed by 58-904a (*b*), *supra.* The latter section clearly provides that it must be "income from the assets of a decedent's estate" before it becomes distributable to a specific devisee.

Since "Annual crops, whether severed or not from the land of the decedent at the time of his death" by virtue of the probate code are "personal assets," they could not become "income from the assets."

K. S. A. 1970 Supp. 58-903 (*b*) provides in part:

". . . Principal includes (1) consideration received by the trustee on the sale or other transfer of principal . . . or replacement or change in the form of principal;"

Applying this provision of the Uniform Act, growing crops at the decedent's death, which are subsequently harvested and sold, represent only a change in the form of the principal. Receipts on the sale of such crops represent only consideration received on their sale or other transfer.

We now turn to the appellant's argument that as between the decedent and her tenant the growing crops were rent under the terms of a three-year lease. The appellant relies upon 58-903 (*a*) (1), which provides that "rent" of real property is income. The disposition of growing crops in a decedent's estate cannot be made dependent upon whether the decedent had leased the land which she owned, or was farming it herself. The provisions of 59-1206, *supra,* make no such distinction. Yet, under the appellant's theory growing crops under a lease would pass to a specific devisee, while growing crops planted by the decedent would not.

The appellant's alternative contention, if he is not entitled to all of the growing crop, that he is entitled to that portion accruing after the decedent's death under 58-904 (*b*) (2) because the rent paid pursuant to contract was a periodic payment of rent, is not persuasive. *Cooper v. Cyr,* 141 Kan. 236, 40 P. 2d 375, cited by the appellant as authority to apportion the crop from its planting to date of death to the estate, and from date of death to its harvest to the specific devisee, is distinguishable. There the decedent who

leased the land was a *life tenant* only, who died before the maturity of the crop.

The rule is recognized in *Cooper v. Cyr*, supra, that the *landlord's interest in growing crops* is inchoate with the sowing of the seed in his ground and attaches to the growing grain. As such, it is an *asset*. This rule is recognized in K. S. A. 58-2525.

The apportionment rule of 58-904 (*b*) (*2*) can have no application to growing crops in a decedent's estate. In the first place apportionment applies only to "periodic payments, . . . including rent." A landlord's share of a growing crop is not a "periodic payment." It is merely a reserved share of the crops. While the growing crop has value to the landlord after the date of seeding, there may never be any payment, particularly where the crop is destroyed either by drouth, hail, wind, flood, fire caused by lightning, or any other unforeseeable event. If in a given year, one, two or more crops are planted, the landlord still gets his share of the crops, whatever the crop may be.

In the second place, the growing crop here was "rent" only as between the tenant and the decedent, including her executor. As between the executor and the appellant, it was a growing crop, or as 59-1206, *supra*, describes it, an "annual crop" whether severed or not.

The words "periodic payments" in our opinion, were intended to apply to specific periods, such as a week, month or year, and not to a landlord's share of an annual crop whose growing season may vary depending upon the weather and other factors.

In conclusion, we hold the "personal asset" consisting of the growing wheat crop on the date of the decedent's death, was not converted to "income from the assets of a decedent's estate" by the provisions of the Uniform Principal and Income Act. Therefore, it remained a "personal asset" under K. S. A. 59-1206, and was properly inventoried and administered as such. The receipts from the sale of the growing wheat crop, after its harvest, represent consideration received from the sale of principal under K. S. A. 1970 Supp. 58-903 (*b*) (*1*) and remains a personal asset of the decedent's estate. Consequently, they passed to the trustee under the residuary clause of the will, where the income produced from the investment of such personal asset then becomes distributable income to the trust beneficiaries in accordance with the will.

The judgment of the lower court is affirmed.