No. 54,246

HAROLD KUMBERG, BOB KUMBERG and FRANK KUMBERG, *Appellants,*
v. CARL KUMBERG, *et al., Appellees* and *Cross-Appellants.*

(659 P.2d 823)

Opinion filed February 4, 1983.

*W. Luke Chapin,* of Chapin, Penny & Goering, of Medicine Lodge, argued the cause and was on the briefs for appellants and cross-appellees.

*Steven C. Day,* of Turner & Boisseau, Chartered, of Wichita, argued the cause, and *Christopher Randall* and *Hal D. Meltzer,* of the same firm, were on the brief for appellees and cross-appellants.

The opinion of the court was delivered by

MILLER, J.: This is another chapter in a continuing controversy between the surviving brothers and sister of Herman Kumberg, deceased. At issue here is the interest of the brothers and sister in a producing gas well. Plaintiffs and appellants are Harold Kumberg, Bob Kumberg and Frank Kumberg; defendants and appellees are Carl Kumberg, individually and doing business as Gunner Oil Company, Beatrice Kumberg, Gunner Oil Company, a corporation, and Central States Gas Company, a corporation. We will first state the background facts and then discuss the issues presented.

Herman Kumberg owned a quarter section of land in Pratt County, Kansas, and eighty acres in Barber County, Kansas, at the time of his death on August 16, 1970. His will, dated July 22, 1969, was admitted to probate and record in the Probate Court of Barber County on September 9, 1970. Herman disposed of his Kansas real estate by the fourth paragraph of his will, which reads:

"FOURTH: I declare that I am possessed of an interest in land in the State of Kansas. I hereby give, devise and bequeath to my brother, CARL KUMBERG, all of my interest in any land in the State of Kansas; but I direct my brother, CARL, to divide the net profits from my share of such land among the survivors of my brothers and sister, including my brother CARL."

An order of final settlement was entered in the Probate Court of Barber County on August 11, 1972, in which the court construed the quoted paragraph of the will as follows:

"[T]he court finds that fee title to the real estate above-described [the quarter section in Pratt County and the 80 acres in Barber County] was devised and bequeathed by the decedent to Carl Kumberg and vested in him at the time of the decedent's death. The court further finds that by the terms of the Will, the decedent directed Carl Kumberg, his heirs and assigns to divide the net profits derived from said real estate above-described among the survivors of the decedent's brothers and sister, namely, Frank Kumberg, Bob Kumberg, Harold Kumberg, Carl Kumberg and Beatrice Kumberg, and the court finds that upon the death of one or more of the surviving brothers or sister, the net profits from said described real estate shall continue to be divided among the survivors until the death of all brothers and sister and the division of profits shall thereupon and forever cease and terminate."

No appeal was taken from that order.

Two years later an action which we shall refer to as *Kumberg I* was commenced in the District Court of Barber County. This

first dispute concerned the profits from agricultural production on the land Carl inherited from Herman. The Court of Appeals later described that proceeding as follows:

"In 1974 a dispute arose among the brothers. Carl had possession of the land and was paying the other brothers such amount as he deemed proper. An action was filed by plaintiffs [Harold, Bob and Frank Kumberg] against Carl and the sister, Beatrice, seeking an accounting and the appointment of a trustee. A journal entry of judgment was entered on July 1, 1974, in which the district court made the following finding:

'That One-third crop rent is the customary rental arrangement in the area in question; that the term "net profits" as used in the Will of Herman Kumberg, deceased, must have referred to "net rentals" . . . . that a one-third crop rental arrangement is interpreted by the Court to include receipts for wheat, wheat pasture, Government payments, feed ground, and any other income from the premises, including oil and gas lease bonuses and rentals. . . .'

"The court retained jurisdiction for such further orders as might be necessary or desirable. This judgment was not appealed." *Kumberg v. Kumberg,* 5 Kan. App. 2d 640, 641, 623 P.2d 510 (1981).

The next proceeding, *Kumberg II,* from which the foregoing quotation was taken, was filed by Harold, Bob and Frank Kumberg against Carl Kumberg on March 15, 1979. This dispute concerned the proper division among the Kumbergs of oil and gas royalties and the landowners' overriding royalties from an existing oil and gas lease on the land which is the subject of the present lawsuit. In its opinion affirming the trial court, the Court of Appeals said:

"The action giving rise to this appeal was filed by the plaintiffs on March 15, 1979. Although originally broader in scope, the case was finally submitted to the trial court on the single issue of whether or not oil and gas royalties and landowners' overriding royalties are 'net profits' within the meaning of the term as used in Herman's will. The trial court ruled on June 19, 1979, that oil and gas royalties were included within the 'net profits' provision of Herman's will and were to be distributed under the applicable provisions of the Uniform Principal and Income Act, K.S.A. 58-901 *et seq.* There is now a gas-producing well on the land.

. . . .

"The nature of an oil and gas royalty interest is defined in *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.,* 189 Kan. 125, 130, 368 P.2d 19 (1962), as follows:

" '[T]he term "royalty" has reference to a right to share in production of oil and gas at severance; it is personal property, and does not include a perpetual interest in the oil, gas . . . in and under the land.'

"The effect of the trial court's ruling was not to create a life estate in the land, as asserted by defendant, and thus it is not contrary to the 1972 order of final settlement in the probate court which decreed defendant to be the owner in fee

simple. Simply stated, the court held only that Herman, by the terms of his will, had given a lifetime interest to his brothers and sister in the net profits from the land, which included oil and gas royalties.

"The Uniform Principal and Income Act was adopted in this state in 1951. It was last amended in 1965 (K.S.A. 58-901 *et seq.*), and the rights of the parties in this case were all acquired since this amendment. Its general scope and purpose was explained in *Pederson v. Russell State Bank, Executor*, 206 Kan. 718, 721, 481 P.2d 986 (1971), as follows:

" 'Its broad purpose is to provide rules for the guidance of fiduciaries to determine what is principal and what is income, to determine who is entitled to the principal and who is entitled to the income, and to determine the allocation of expenses to each.'

"The act defines an 'income beneficiary' as the person to whom income is presently payable or for whom it is accumulated for distribution as income, and it defines 'remainderman' as the person entitled to principal. K.S.A. 58-901. It defines 'income' as the return in money or property derived from the use of principal, including receipts from the disposition of natural resources as provided in K.S.A. 58-909 of the act, and it defines 'principal' as including royalties and other receipts from the disposition of natural resources as provided also in K.S.A. 58-909. K.S.A. 58-903.

"It then provides for the distribution of royalties as follows:

" '58-909. **Disposition of natural resources.** *(a)* If any part of the principal consists of a right to receive royalties, overriding or limited royalties, working interests, production payments, net profit interest, or other interests in minerals or other natural resources in, on or under land, the receipts from taking the natural resources from the land shall be allocated as follows:

. . . .

" '(3) If received as a royalty  .  .  .  receipts  .  .  .  shall be apportioned on a yearly basis in accordance with this paragraph whether or not any natural resource was being taken from the land at the time the trust was established. Twenty-two percent (22%) of the gross receipts (but not to exceed fifty percent [50%] of the net receipts remaining after payment of all expenses, direct and indirect, computed without allowance for depletion) shall be added to principal as an allowance for depletion. The balance of the gross receipts, after payment therefrom of all expenses, direct and indirect, is income.

" '(b)  .  .  .  as to all depletable property acquired after the effective date of this act by an existing or new trust, the method of allocation provided herein shall be used.'

"We believe that in the absence of any instructions in Herman's will as to what should be included as 'net profits' from the land and whether or not oil and gas royalties should be included, the trial court was correct in ruling that the Uniform Principal and Income Act, K.S.A. 58-901 *et seq.*, should govern the distribution of such royalties." 5 Kan. App. 2d at 641-43.

No petition for review of that determination was filed with this court, and the decision in *Kumberg II* is final.

After the oil and gas lease involved in *Kumberg II* had expired, Carl leased the land to "Gunner Oil Company" on September

14, 1979. Carl, individually, was doing business as "Gunner Oil Company," which was not incorporated at that time, so he in effect leased to himself. Gunner Oil hired a rig and completed a good shallow gas well in November, 1979, at a total cost of approximately $90,000. Gas is being produced, and is being purchased by Central States Gas Company. The accumulating royalties and gas purchase proceeds are being paid into the hands of the clerk of the district court, who is authorized to invest the moneys in savings or money market certificates, all by agreement of the parties. Disbursement will follow the final determination of ownership herein. At the time of oral argument, approximately $400,000 was in the clerk's hands.

The lease between Carl and Gunner Oil provides for a one-eighth royalty to the landowners, but does not provide for bonus payments. It was made without consultation with or notice to the plaintiffs.

Gunner Oil Company was incorporated in April, 1980. Carl Kumberg owns half of the stock, and his daughter, Carla, owns the remainder. Carl Kumberg d/b/a Gunner Oil Company made an assignment of the lease to the newly incorporated Gunner Oil Company on or about April 4, 1980.

This case, *Kumberg III*, was filed on June 23, 1980. Plaintiffs contend that as "nonjoining co-tenants in the lease," they are entitled to a carried interest of three-fifths of 78% of all oil and gas produced from the well, after expenses of drilling and completing the well have been paid. They claim that the lease is a nullity, and that Carl's self-dealing was a violation of his fiduciary duty and constituted a fraud upon the rights and interests of plaintiffs.

Carl Kumberg denies that plaintiffs are entitled to the interest they seek, denies self-dealing or fraud, denies breach or existence of fiduciary duty, and contends that the issues here were determined in *Kumberg II* and are res judicata. He also pleads collateral estoppel, laches, and waiver.

Both parties filed motions for summary judgment. After hearing argument and receiving briefs, the trial court issued a memorandum opinion dated August 27, 1981. The court noted that Carl was willing to make a division of a ⅛ royalty as ordered in *Kumberg II*. The court held that Carl could not "wheel and deal" to his brothers' detriment and that making a lease to himself with

no bonus or overriding royalty was "wheeling and dealing." The court then asked that further evidence be produced on the question of what was a fair and adequate return on the lease. The court found that although Carl was entitled to lease the land as he pleased, he had some duty to protect the interests of the other income beneficiaries under the terms of Herman's will.

Upon hearing further evidence, the court found that a buyer would have paid $15.00 per acre bonus and an overriding royalty of $1/16$ of $8/8$ or a total royalty of $3/16$, rather than the customary $1/8$ royalty. The court directed that the royalty be divided among plaintiffs on the basis of $3/5$ of 78% of $3/16$ of the total production. The other $2/5$ of 78% of the $3/16$ royalty will go to Carl and Beatrice. (This division was determined in accordance with the Uniform Principal and Income Act, K.S.A. 58-901 *et seq.*) The plaintiffs appeal, claiming that they are entitled to share in *total* production, not just the customary royalty and bonus, and that the court was wrong in deciding the case as though a valid lease had been made.

The rights of the parties to this action are dependent upon their respective rights and obligations under the will of Herman Kumberg. Plaintiffs, in their briefs, describe themselves variously as "co-owners," "life tenants," "income beneficiaries," "life income beneficiaries," and "co-tenants for their lifetimes."

We start with the will, which devised all of the land to Carl but directed him "to divide the net profits . . . [therefrom] among the survivors of my brothers and sister, including my brother Carl." The probate court, in construing the will, found that fee title to the realty vested in Carl at the time of the decedent's death. The court also found that the will directs Carl, his heirs and assigns, to divide the net profits derived from the real estate among the survivors of the decedent's brothers and sister. All of the beneficiaries under the will, the individual parties to this action, were before the probate court; no one appealed from its final order.

*Kumberg I* determined, in effect, that when Carl farms the land himself, rather than renting it to others, his brothers and sister are entitled to share in the usual "net rentals," and that a $1/3$ crop rental arrangement is the customary rental in the area. The court held that "net profits" as used in the will must have referred to "net rentals," and it further held that term to include

oil and gas lease bonuses and rentals. That order also is final, no appeal having been taken.

*Kumberg II* merely adopted the ruling that oil and gas royalties were within the "net profits" mentioned in the will and further held that the division among the brothers and sister of the royalties from gas production under an existing gas lease on the land should be governed by the Uniform Principal and Income Act, K.S.A. 58-901 *et seq.* The Court of Appeals specifically held that the trial court's ruling, which it affirmed, did not create a life estate in the land in Carl's brothers and sister. That ruling, also, is final.

Thus it is established, through prior proceedings, that under the will (1) Carl Kumberg is the owner of the fee title to the land; (2) that the five brothers and sister are entitled to share in the "net profits," which includes "net rentals" and oil and gas royalties; and (3) that Harold, Bob, Frank and Beatrice Kumberg do not have a life estate in the land.

The primary function of a court in the interpretation of a will is to ascertain the testator's intent as derived from the four corners of the will. *In re Estate of Berryman,* 226 Kan. 116, Syl. ¶ 1, 595 P.2d 1120 (1979). Did Herman Kumberg desire that Harold, Bob, Frank and Beatrice Kumberg have a possessory interest in the land? Did he intend that they have an interest in the minerals in place? We find no indication in the will that such was his intention or desire. So long as each lives, he or she has an interest not in the land or the minerals thereunder, but in the "net profits" from the land. They have no right to occupy, use, or enjoy the land. Theirs is a lifetime interest, terminable upon death, in the "net profits" from the land, including rentals, delay rentals, cash bonuses, and oil and gas royalties. The interest is incorporeal, issues out of the land, is charged upon it, and is limited by the duration of the life of the holder. Each holder is but an income beneficiary for his or her lifetime.

The distinctions between royalty interests and mineral interests were discussed by the Court of Appeals in the recent case of *Palmer v. Brandenburg,* 8 Kan. App. 2d 154, 158-159, 651 P.2d 961 (1982). The court said:

"Distinction between a royalty interest and a mineral interest has been the subject of judicial inquiry and decision. *E.g., Cosgrove v. Young,* 230 Kan. at 706-713; *Corbin v. Moser,* 195 Kan. 252, 403 P.2d 800 (1965); *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.,* 189 Kan. 125, 368 P.2d 19 (1962); *Froelich*

*v. United Royalty Co.*, 178 Kan. 503, 290 P.2d 93 (1955); *Lathrop v. Eyestone*, 170 Kan. 419, 227 P.2d 136 (1951). The distinction is well established. A 'royalty interest' refers to the right to share in the production of oil and gas at severance. It is personal property. A 'mineral interest' refers to oil and gas in place. It is a real property interest. See, *e.g., Cosgrove v. Young*, 230 Kan. at 708; *Stratmann v. Stratmann*, 204 Kan. at 662; *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.*, 189 Kan. at 130-131."

Clearly, the interests of the appellants are in the nature of "royalty interests." Appellants have no ownership in the minerals in place; they have no "mineral interests." Their interest in the income or "net profits" constitutes personal, not real, property. The share of the total production sought by the appellants can be theirs only if they possess an interest in the minerals in place. As we have found, Herman Kumberg's will, and the final decisions of various courts construing it, make it clear that appellants do not possess such an interest.

Next, we shall determine the validity of the oil and gas lease to Gunner Oil Company. Appellants contend that the lease was a nullity, as the trial court held. Appellees raise that ruling as their first issue in the cross-appeal, and contend that the trial court erred in finding the lease a nullity. The lease, dated September 14, 1979, was from Carl Kumberg to Gunner Oil Company. Carl was then doing business as Gunner Oil Company, a sole proprietorship. The lease was executed and recorded; the well was drilled and completed in November, 1979; gas in marketable quantities was found. The following April, Gunner Oil Company was incorporated and Carl Kumberg d/b/a Gunner Oil Company assigned the lease to the corporation.

In *Sinclair Refining Co. v. Long*, 139 Kan. 632, Syl. ¶ 2, 32 P.2d 464 (1934), we said:

"There must be at least two parties to a contract. It is not possible for an individual, simply by his own mental operations, to enter into a contract with himself, or with himself and others, even though he acts in different capacities."

This appears to be the general, if not universal, rule. 17 C.J.S., Contracts § 26; 17 Am. Jur. 2d, Contracts § 15; Simpson, Law of Contracts § 3; Restatement (Second) of Contracts § 3 (1981).

We agree with the district court that the lease from Carl Kumberg to Gunner Oil Company was an attempt by Carl Kumberg to contract with himself, and was void. The later assignment of the lease to the corporation did not breathe life into the void instrument. As stated in 6A C.J.S., Assignments § 73: "As a

general rule, one who takes an assignment of a void contract . . . acquires nothing thereby." Gunner Oil Company, a corporation, acquired nothing by the purported assignment to it.

Appellants contend that Carl Kumberg has no right to possession of the minerals, or to lease or drill for oil or gas. What we have heretofore said disposes of this contention. The will gives Carl Kumberg the fee title interest in and to the real estate, and every part thereof, including the minerals underlying the land. Appellants are income beneficiaries for their respective lifetimes. They have no possessory interest. This contention is without merit.

Appellants contend that this case should be controlled by the rule of *Bullard v. Broadwell*, 588 S.W.2d 398 (Tex. Civ. App. 1979). Broadwell owned the surface estate and ⅔ of the mineral interest. Bullard owned a ⅓ mineral interest. Broadwell drilled a producing oil well, and then sought to have Bullard's share fixed at ⅓ of the usual ⅛ royalty. The trial court agreed. The Texas Court of Civil Appeals reversed, finding that in the absence of a valid lease, Broadwell is entitled to recover all of the reasonable and necessary costs of drilling, completing and operating the well, but that after the original cost is recovered, Bullard is entitled to the value of ⅓ of all oil and gas produced, less his pro-rata share of the reasonable costs of producing and marketing the oil and gas. The court said:

"Bullard's first four points of error contend that the trial court erred in entering judgment that he is entitled to only a royalty interest of one-third of one-eighth of the oil and gas. We agree.

"Our Supreme Court stated in *Cox v. Davison*, 397 S.W.2d 200 (Tex. 1965):

" 'The Texas rule is that a cotenant who produces minerals from common property without having secured the consent of his cotenants is accountable to them on the basis of the value of the minerals taken less the necessary and reasonable cost of producing and marketing.'

"Broadwell did not secure Bullard's consent to the exploration and production of oil from this tract by the Broadwell family. We feel that *Cox v. Davison*, supra, is controlling. Broadwell had the right to execute oil, gas and mineral leases which would bind the interest owned by Bullard, but the trial court found that the lease executed by Broadwell had expired. Neither side appealed that portion of the judgment. The provision in the mineral deed to Bullard for one-third of all royalty was conditioned upon 'the terms of any such lease or leases.' In the absence of a valid lease, Bullard is not limited to one-third of the royalty interest; he is entitled to a full one-third mineral interest, less his pro rata share of the reasonable costs of producing and marketing the oil and gas.

"Broadwell insists that *Cox v. Davison,* supra, is not controlling and that Bullard should be treated as a cotenant who has 'consented by implication' to the development of the property by his cotenant and is, therefore, due only an undivided one-third of the usual one-eighth royalty. We cannot agree. . . .

"Broadwell admits that he has found no Texas case dealing with this exact problem, but he cites 2 Williams and Meyers, Oil and Gas Law § 329 (1959) which discusses production by a mineral owner without a lease where there is an outstanding 'non-executive mineral interest.' The authors *suggest* that the mineral owner who secures production must account to the non-executive mineral owner for a portion of gross production determined by multiplying the non-executive's fractional interest times the usual royalty in the area. The authors cite no cases for their suggestion, and they concede that:

" 'If the interest is considered a concurrent interest, and its owner a cotenant, then the cotenancy rule could be applied. Under this rule, the non-executive mineral owner would take his fraction of gross production less his fraction of the cost of drilling, equipping and operating the wells.' We decline to follow the authors' suggestion, and we hold that the cotenancy rule applies." 588 S.W.2d at 399.

Bullard, it will be noted, was the owner of a one-third mineral interest; Broadwell owned the remaining two-thirds. They were thus coowners or cotenants of the minerals underlying the land. A cotenancy is an association compelled by interest; it exists where there is multiple ownership and a unity of possession or right of possession of the property. See *Zimmerman v. Texaco, Inc.,* 409 S.W.2d 607 (Tex. Civ. App. 1966), *writ ref'd n.r.e.,* 413 S.W.2d 387 (Tex. 1967).

Appellants in the case at hand do not have a mineral interest; they have no possessory interest in the land or the minerals; they are not cotenants; they are lifetime income beneficiaries. To apply the Texas cotenant rule to the fact situation at hand would result in treating appellants' interests as though they were mineral interests. This we decline to do. We conclude that the rationale of *Bullard v. Broadwell* is not controlling under the facts of this case.

Appellants complain that the trial court converted their cause of action from one for rescission to a claim for damages. They contend that they brought suit to have the lease declared invalid; that the trial court found that the lease was void, but on its own proceeded to hear evidence as to the market value of an oil and gas lease in the area in which the land lies, and then granted judgment accordingly.

We note that the amended petition, upon which this case was presented to the trial court, sought a judicial declaration that the

oil and gas lease from Carl Kumberg to Gunner Oil Company was a nullity. It also sought a determination that each of the plaintiffs was the owner of an undivided one-fifth mineral interest, and they sought an order of the court finding that each of them had a one-fifth "carried interest." The trial court determined the rights and interests of the parties, but did not agree with appellants; it determined that each of them had an interest not in the minerals in place, but in the usual cash bonuses and royalties then being paid for oil and gas leases in that area. Merely because the trial court disagreed with appellants as to their interest does not indicate that it converted the action from one for rescission to one for damages. It merely gave the appellants the relief that they sought—a determination of their rights and interests, under the will of Herman Kumberg.

Appellants also object to the trial court's determination of their interests. What has already been said in this opinion disposes of this contention. We hold that under the facts of this case, Carl Kumberg, as the owner of the minerals, having secured production without a valid lease, is obligated to account to the appellants and to his sister for their fractional shares in the usual bonus and royalty in the area. The trial court was fully justified in hearing evidence on the matter of the "going rates" in the area, and its decision that a willing buyer in the area would have paid a $15 per acre bonus, and a total royalty of three-sixteenths, is amply supported by the evidence.

Distribution of the income, of course, is governed by the Uniform Principal and Income Act, K.S.A. 58-901 et seq. Appellants have no objection to the application of the act, but contend that it should apply to the entire production. We disagree. Appellants' argument in this regard is fundamentally a restatement of their other arguments, above discussed. The trial court was correct in awarding appellants 3/5 (or 1/5 each) of 78% of 3/16 of total production. We see no reason to burden this opinion with a discussion of the act; what was said by the Court of Appeals in Kumberg II is applicable here. See Kumberg v. Kumberg, 5 Kan. App. 2d 640, at 642-643.

Appellees, by cross-appeal, contend that appellants' claims are barred by laches, res judicata, estoppel, and waiver. We find no merit in these claims. This action was commenced in June, 1980, within a few months of the time appellants first learned of the

Gunner lease. The cases relied upon cite delays of thirteen and fourteen years. There was no unreasonable delay here, and no laches. *Kumberg I* sought a division of farm rentals; *Kumberg II* sought a division of the royalties under a valid and existing oil and gas lease. There is no identity of the things sued for or the causes of action; this action seeks a determination of the rights of the appellants in and to production without a valid lease. In *Adamson v. Hill*, 202 Kan. 482, 487, 449 P.2d 536 (1969), we said:

"We have long followed the rule that an issue is *res judicata* only when there is a concurrence of four conditions, namely, (1) identity in the things sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of the persons for or against whom the claim is made."

Further, the claim of res judicata does not apply when an entirely different claim for relief is stated in a subsequent action, even though the suit may be between the same parties. See *Parsons Mobile Products, Inc. v. Remmert*, 216 Kan. 138, 139, 531 P.2d 435 (1975). We conclude that the requirements of res judicata are not met, and that the doctrine has no applicability here.

The estoppel and waiver arguments are premised upon the contention that the lease sued upon in *Kumberg II* is the same lease sued upon here. Such is not the case, and we find no estoppel or waiver.

We have carefully considered each of the issues raised by the parties, and the authorities cited, and find no error.

The judgment is affirmed.

HERD, J., not participating.

HOLMES, J., dissenting.