(833 P.2d 136)

No. 67,313

PAN OIL AND GAS EXPLORATION, INC., *Appellant*, v. KELT KANSAS, INC., KELT ENERGY, INC., and AMERICAN EXPRESS BANK, LTD., *Appellees*.

Opinion filed June 5, 1992.

*John R. Horst*, of Caney, for appellant.

*Jon R. Viets*, of Independence, for appellees.

Before ELLIOTT, P.J., PIERRON, J., and DEAN J. SMITH, District Judge, assigned.

ELLIOTT, J.: Pan Oil & Gas Exploration, Inc., (Pan Oil) appeals from the trial court's ruling on its petition for declaratory judgment against Kelt Kansas, Inc., Kelt Energy, Inc., and American Express Bank, Ltd., (defendants) concerning the interpretation of a document assigning an interest in an oil and gas lease.

We reverse and remand for further proceedings.

The essential facts are undisputed. LCO, Inc., acquired a 7/8 working interest in an oil and gas lease in Montgomery County.

LCO, in 1976, assigned all its interest in the lease to E. A. Berry, subject to the following reservation:

"This assignment is subject to an oil payment of $100,000.00 out of 1/16th of 7/8ths W. I. to be paid $50,000.00 to LCO, Inc. and $50,000.00 to Hughes Industries, Inc."

LCO's right to one-half of the received payment was eventually conveyed to plaintiff Pan Oil; Berry assigned his interest in the lease and it is presently held by Kelt Kansas, Inc. Kelt Energy, Inc., and American Express Bank claim an interest in the case by virtue of a mortgage on the lease in question.

At the time of LCO's assignment and reservation of the "oil payment," only oil was being sold off the lease. A gas well had been drilled, but was not hooked up to a gathering system. Gas was not actually marketed from the lease until 1988.

Over the years, the "oil payment" has been paid from oil production only. Plaintiff contends "oil payment" also includes gas and other hydrocarbons; defendants contend "oil payment" means exactly and only what it says. The trial court held that "oil payment" does not include proceeds from the sale of gas.

The trial court found the phrase "oil payment" to be clear and unambiguous and refused to recognize "oil payment" as a term of art in the oil patch of southeastern Kansas. Although we find the phrase ambiguous, we agree with the trial court's conclusion.

Since the case was presented on stipulated facts to the trial court, our scope of review is de novo. *Penalosa Co-op Exchange v. Farmland Mut. Ins. Co.*, 14 Kan. App. 2d 321, 323, 789 P.2d 1196, *rev. denied* 246 Kan. 768 (1990).

We agree with the trial court that the term "oil payment" standing alone cannot be recognized as a term of art. But we disagree with the trial court that the term is free from ambiguity.

Even the treatises seem unsure as to how to define an "oil payment," although the term has been used for decades. An oil payment is a carried (non-cost-bearing) interest in the lease. See Hemingway, The Law of Oil and Gas § 9.9 (3d ed. 1991). Carried interests may be designated as overriding royalties, or they may be limited in duration or to a certain sum. Hemingway states that "[i]n the latter case they are usually designated as production payments, although earlier usage was to refer to the particular

product out of which the sum was payable, *e.g.*, oil payment." Hemingway, § 9.9 at 634.

Williams and Meyers state that the term "production payment" includes oil, gas, and other minerals, but that "oil payment" is the more common term used even where minerals other than oil are included. 2 Williams & Meyers, Oil & Gas Law § 422, p. 366 (1991). Kansas courts have frequently relied on Williams and Meyers in defining oil and gas words and phrases. See, *e.g., Adolph v. Stearns*, 235 Kan. 622, 628, 684 P.2d 372 (1984).

On the other hand, Williams and Meyers caution that the product or products subject to the "oil payment" should be clearly specified at the time the interest is created. 2 Williams & Meyers, § 422.4(a).

Kansas cases have not addressed the precise meaning of "production payment" and "oil payment," although a few cases have addressed the terms in passing. *E.g., Kumberg v. Kumberg*, 232 Kan. 692, 695, 659 P.2d 823 (1983); *Klippel v. Heintz*, 231 Kan. 312, 313, 644 P.2d 428 (1982).

The true nature or character of a reservation of oil and gas rights is not determined only by the label attached to it by the parties; it is determined by the intent of the parties at the time. *Cline v. Angle*, 216 Kan. 328, 332, 532 P.2d 1093 (1975).

In the present case, the four corners of the document provide no clues as to the intent of the parties at the time of its execution. And, of course, extrinsic evidence of the parties' intent is admissible when the terms of an agreement are ambiguous. *Lillibridge v. Mesa Petroleum Co.*, 907 F.2d 1031, 1037 (10th Cir. 1990).

Four affidavits were filed by the parties in the present case, and the trial court admitted them. But because the trial judge found the term "oil payment" to be clear and unambiguous, we must assume he did not consider them or weigh them in determining what the phrase means in the reservation here presented.

We hold the term "oil payment" under the facts of this case to be ambiguous. The treatises seem to agree. And the four affidavits filed in this case seem to agree.

Victor Leis, with 22 years' experience in the oil patch, stated that "oil payment" generally covers a fraction of the production of both oil and gas and other hydrocarbons. But both W.T.

Stoeckinger and Clyde G. Layton swore that "oil payment" covers only oil and not gas or other hydrocarbons.

The fourth affidavit was from Clay E. Hedrick, Jr., who was the president of LCO at the time of the assignment. He stated that at the time of the assignment, test results from the completed gas well were quite good and that part of the $100,000 reserved oil payment was to recognize the value of the gas well.

Accordingly, we reverse and remand for further proceedings. Since we find the term "oil payment," under the facts of the present case, to be ambiguous, the trial court must consider extrinsic evidence in order to determine the intent of the parties at the time the reservation was executed. The trial court may simply weigh and consider the four affidavits submitted to it or may open the proceedings to live testimony, at its discretion.

Because of our holding on this issue, we need not decide whether the assignment/reservation is subject to reformation.