No. 114,507

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RONALD NICKELSON and BETTY NICKELSON,
*Appellants*,

v.

ALICE OLIVE BELL, *et al.*,
*Appellees*.

SYLLABUS BY THE COURT

1.

A mineral interest is an interest in real property.

2.

Absent certain exceptions, the property of a resident decedent, who dies intestate, shall at the time of death pass by intestate succession. K.S.A. 59-502.

3.

In all cases of intestate succession the property shall pass immediately from the decedent to the person entitled to receive it. K.S.A. 59-509.

4.

An owner of an unused mineral interest, as the term is used in K.S.A. 55-1604, is one who has acquired the right to possess, use, and control the subject mineral interests.

5.

A person who has acquired a mineral interest through intestate succession has the right to possess, use, and control the subject mineral interests.

1

6.

A person who has acquired a mineral interest through intestate succession is not required to possess a decree of descent obtained under K.S.A. 59-2251 prior to filing a claim under the mineral lapse statute.

Appeal from Graham District Court; PRESTON PRATT, judge. Opinion filed September 16, 2016. Affirmed.

*Tony A. Potter*, of Potter Law Office, P.A., of Hill City, for appellants.

*Jill A. Elliott*, of Elliott Law Office, P.A., of Hill City, for appellees.

Before ARNOLD-BURGER, P.J., MCANANY and GARDNER, JJ.

ARNOLD-BURGER, J.:  Generally, any interest in mineral rights will lapse and revert to the surface owner of the property if it remains unused for 20 years. K.S.A. 55-1602. The owner of an unused mineral interest may prevent the lapse by filing a claim as set out in K.S.A. 55-1604. When surface landowners Ronald and Betty Nickelson (Nickelsons) sought to quiet title to unused mineral rights on their land, several people filed claims under K.S.A. 55-1604. Because some of these people maintained ownership through intestate succession, without any judicial determination regarding their acquisition of the mineral rights upon their ancestors' death (commonly referred to as a decree of descent), the Nickelsons asserted that these heirs were not *owners* of mineral rights as contemplated by the lapse statute. The district court disagreed, finding that one only need to be a person claiming to be an owner of the minerals to file a claim. It is then up to the court to "determine who owns the mineral interest that both parties claim to own adversely to the other." Because we agree that the intestate descendants in this case did not have to be in possession of a decree of descent from the district court before filing their claim under the mineral lapse statute, we affirm.

2

FACTUAL AND PROCEDURAL HISTORY

The facts in this case are largely undisputed. Nickelsons own the surface rights and part of the mineral rights to certain land in Graham County, Kansas. In November 2014, they filed an action to quiet title, alleging that the mineral interests owned by others had lapsed from disuse. Following our Kansas mineral lapse statute, Nickelsons published notice of the potential lapse in a local newspaper, and they attached that notice to their petition. Between the petition and notice, Nickelsons named roughly 20 people they believed to have a claim to the mineral rights at issue.

After the notice ran in the newspaper, many people filed claims to the lapsing mineral interests. Nickelsons requested that the district court hold a hearing to determine what, if any, ownership interest these individuals actually held in the lapsing mineral rights. Meanwhile, several of these potential interest-holders filed answers to the quiet title suit, reasserting that they owned the mineral rights at issue.

After a time, Nickelsons filed a motion for summary judgment against all but seven of the people who filed claims. For simplicity's sake, all of the individuals asserting claims will be collectively referred to as Defendants. In support of this motion, Nickelsons claimed that Defendants provided no proof that they owned the subject mineral rights. Without any judicial decree of descent or a probate proceeding, Nickelsons argued, Defendants showed only "some family or kinship to the actual owners of the mineral interests."

Defendants replied to the motion by outlining precisely how the mineral rights descended from the original owner to them. Highly summarized, this history revealed that although many of the interests stemmed from probate proceedings, several originated from individuals who died intestate. Defendants provided a number of exhibits documenting the history of these interests. In terms of those individuals with interests

3

inherited through intestate succession (collectively the Intestate Descendants), Defendants argued that the mineral rights at issue passed directly from their previous owners to the Intestate Descendants, requiring no judicial determination of their rights.

Ultimately, the district court denied the Nickelsons' summary judgment motion and, after a hearing on the issue of ownership, determined that all the Defendants' claims were valid. In its ruling, the district court explicitly rejected the argument that the Intestate Descendants required a judicial decree of descent in order to file a claim under the mineral lapse statute. Instead, the district court found that the purpose of the mineral lapse statute was served "by allowing anyone who claims ownership of the minerals to file a statement of claim, even if that person is not a record owner at the time the claim is filed." It is then up to the court to "determine who owns the mineral interest that both parties claim to own adversely to the other" as part of the quiet title action that must ultimately be filed. After calculating the fractional ownership interest of all involved parties, the district court quieted the title to the land. Nickelsons stipulated that this calculation accurately reflected each individual's interest.

ANALYSIS

The sole issue on appeal concerns whether the Intestate Descendants constitute owners capable of filing a claim under our Kansas mineral lapse statute. This statute provides that any interest in mineral rights will lapse and revert to the surface owner if it remains unused for 20 years. K.S.A. 55-1602. That said, the owner of an unused interest may prevent the lapse by filing a claim providing "the name and address of the owner . . . and a description of the land on or under which the mineral interest is located." K.S.A. 55-1604(a). If the owner files the claim before the 20-year period expires, "it shall be considered that the mineral interest was being used on the date the statement of claim was filed." K.S.A. 55-1604(a). However, even if the claim is not filed by the end of that

4

period, the owner can prevent the lapse by filing a claim within 60 days of receiving either actual or publication notice of the potential lapse. K.S.A. 55-1604(b).

Here, neither party alleges any procedural failings under the statute. After all, the record clearly reflects that the Nickelsons properly published their notice, and no one disputes that the Defendants acted on this notice within 60 days. There is also no dispute, as verified in oral argument in this matter, that the ancestors of the Intestate Descendants owned mineral interests in the subject tract of land.

Instead, Nickelsons argue that the Intestate Descendants do not constitute owners under the statute, rendering their claims invalid. They assert that in order to be owners under the statute there must have been a decree of descent obtained by a court, memorializing their interests before their claim was filed, or at least before the 60-day time limit for filing a claim expired. See K.S.A. 59-2250 and K.S.A. 59-2251 (procedure to obtain a decree of decent). And since they failed to take any action within the 60-day time frame required by K.S.A. 55-1604(b), any action now would make their claim untimely.

Interpretation of a statute is a question of law over which this court exercises unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). The most fundamental rule when considering the construction of a statute is that the intent of the legislature controls. 301 Kan. at 918. Therefore, this court must first attempt to ascertain the legislature's intent through the statutory langue enacted, giving common words their ordinary meanings. *Cady v. Schroll*, 298 Kan. 731, 738, 317 P.3d 90 (2014). If the statute is plain and unambiguous, the appellate court should not speculate about the legislative intent and should refrain from reading something into the statute that is not readily found in its words. 298 Kan. at 738-39. Only when the statute's language or text is unclear will the court employ canons of construction to construe the underlying intent. 298 Kan. at 739.

On appeal, Nickelsons emphasize the lack of a clear definition for the term *owner* in the statute. And, indeed, our Kansas mineral lapse statute provides no explicit definition of this term. A broader review of our Kansas oil and gas statutes reveals that in the rare instances when *owner* is defined, it appears in a very specialized context. See, *e.g.*, K.S.A. 2015 Supp. 55-1626(e) (defining "interest owner" for the purposes of the Petroleum Education and Marketing Act); K.S.A. 55-1302(e) (defining a specific type of owner for the purposes of unitization). Additionally, the single Kansas case concerning our mineral lapse statute, *Scully v. Overall*, 17 Kan. App. 2d 582, 840 P.2d 1211, *rev. denied* 252 Kan. 1093 (1992), provides little guidance. There, the plaintiffs essentially argued that a mineral interest's owner needed to prove use when filing his or her claim. But this court rejected that argument, holding that the purpose of the statute was served by the mineral owner simply filing the required claim. 17 Kan. App. 2d at 587. Adopting the analysis of a law professor specializing in oil and gas, the court determined:  "'If the mineral interest owner responds [to the notice of lapse], the interest is no longer forgotten, the name and address of the mineral interest owner is identified, the purposes of the Act are served.'" 17 Kan. App. 2d at 587 (quoting Pierce, *July 1 is Deadline for Filing Claims to Preserve "Unused Mineral Interests,"* 25 Circuit Rider 6, at 9 [Summer 1986]).

Turning to more general definitions, Black's Law Dictionary defines *owner* as "[s]omeone who has the right to possess, use, and convey something; a person in whom one or more interests is vested." Black's Law Dictionary 1280 (10th ed. 2014). Similarly, the ordinary meaning of the term *own* is "to have or hold as property [or to] possess." Webster's Ninth New Collegiate Dictionary 843 (9th ed. 1991). And when explaining the "doubleness of meaning" imbedded in the word *ownership*, Bryan Garner explains that "ownership . . . implies the right of control over an object, quite apart from any actual or constructive control." Garner's Dictionary of Legal Usage 649 (3d ed. 2011). Quoting from a treatise, he continues: "'While it is usual to speak of *ownership of land*, what one

6

owns is properly not the land, but rather the rights of possession and approximately unlimited use, present or future.'" Garner's Dictionary of Legal Usage 649.

Nickelsons contend that, without some sort of judicial determination of their rights, Intestate Descendants never gained the right to possess, use, and control the subject mineral interests. Instead, Nickelsons argue that they are only *potential owners* who need to act in order to affirm their rights. Intestate Descendants, on the other hand, insist that intestate succession occurs automatically, granting them their ownership at the time their ancestors died.

Kansas has long held that a mineral interest is an interest in real property. See *Kumberg v. Kumberg*, 232 Kan. 692, 699, 659 P.2d 823 (1983). Our Kansas Probate Code expressly provides that, absent certain exceptions, "the property of a resident decedent, who dies intestate, shall at the time of death pass by intestate succession." K.S.A. 59-502. Later, another statute notes: "In all cases of intestate succession . . . the property shall pass *immediately* from the decedent to the person entitled to receive it." (Emphasis added.) K.S.A. 59-509. Several of our Kansas cases reiterate this principle, holding: "By law the whole of an estate vests in the heirs, testate or intestate, at the death of an ancestor." *Peterson v. Peterson*, 173 Kan. 636, 640, 251 P.2d 221 (1952); see also *In re Estate of Williams*, 238 Kan. 651, 659, 714 P.2d 948 (1986); *Magaw v. Emick*, 167 Kan. 580, 585, 207 P.2d 448 (1949) (holding that "[w]hile the administrator has a right of possession until the estate is settled . . . the property passes to the heirs"). And as Intestate Descendants observe, a judicial decree of descent "does not create title but merely declares who has acquired the title of the decedent." *Jardon v. Price*, 163 Kan. 294, 299, 181 P.2d 469 (1947). In other words, a decree of descent simply memorializes the property transfer that occurred immediately after the ancestor owner's death. See 163 Kan. at 299.

Whether a future assignee or purchaser of Intestate Descendants' mineral rights may demand a decree of descent as a condition of purchase is not the question before us. We find that an owner of an unused mineral interest, as the term is used in K.S.A. 55-1604, is simply one who has acquired the right to possess, use, and control the subject mineral interests.

No one disputes that the Intestate Descendants' ancestors owned the mineral rights at issue in this case. And according to Kansas law, when they died intestate, their ownership rights passed immediately to Intestate Descendants. At that time, Intestate Descendants gained the possession and use of the mineral rights. Now, they constitute owners capable of filing a valid claim and preventing their interests from lapse. As such, we affirm the district court's decision.

Affirmed.